# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**NICOLE RICHARD,**                    **CASE NO.: 4:16-cv-00184-MW-CAS**

           **Plaintiff,**

**-vs.-**

**GEICO GENERAL INSURANCE
COMPANY, a foreign corporation,**

**Defendant.**

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO GEICO'S MOTION FOR FINAL SUMMARY JUDGMENT

Plaintiff, NICOLE RICHARD, by and through her undersigned attorneys, pursuant to Rule 56, Fed.R.Civ.P., Local Rule 56.1 and the Court's Amended Scheduling and Mediation Order, hereby files her Response in Opposition to GEICO's Motion for Final Summary Judgment, and states:

### I:    Introduction

GEICO's ubiquitous marketing campaigns offer Florida insureds the opportunity to "save 15% or more on their car insurance". However, what GEICO does not tell the public is that the "savings" is provided by GEICO's manipulation of the sales process and automatic rejection of statutorily required uninsured motorist (UM) coverage.

GEICO asks this Court to enter final summary judgment in its favor on the issue of selection/rejection of uninsured motorist ("UM") coverage under Fla. Stat. §627.727(1). GEICO seeks summary judgment despite the fact that its online sales process completely ignores the plain requirements of §627.727(1). GEICO urges this Court to ignore the fact that the on-line application process it developed and executed automatically rejected UM coverage for Mr. Richard without his knowledge. GEICO further ignores the specific statutory requirement that a carrier must secure a written rejection of UM coverage before issuing an auto policy without UM coverage. Finally, GEICO relies heavily on self-serving affidavits of its employees and managers that often directly conflict with their deposition testimony. For these reasons, GEICO's motion should be denied and the matter should proceed to trial for a full and open exploration of GEICO's processes and representations.

## II: **Plaintiff's Statement of Facts**[1]

1.     Oscar Richard went to GEICO's online sales platform on March 7, 2007. His son had recently turned 16 and he was advised by Liberty Mutual[2], his current auto insurer, that his premiums would increase by $1,000 annually when his

---

[1] All exhibits referenced in this response shall be identified by their docket entry number and corresponding page number.

[2] Oscar Richard's Liberty Mutual declarations page confirms he had 100/300 stacking UM on 3 vehicles with an annual premium of $3,184. DE 45-2, pp. 65-68.

son was added to their policy. Oscar Richard Deposition at DE 43-5, 6:17-7:15 ("O. Richard Depo.")

2.      Mr. Richard's interaction and inputs into GEICO's sales platform are documented in screen shots that GEICO calls the "Sales Record". (DE 43-6)[3] The first 18 screen shots of the GEICO "Sales Record" show that Mr. Richard was asked:

      a.      to provide the name of his current auto insurer and his bodily injury (BI) limits. "Sales Record", DE 43-6, p. 1a

      b.      identifying information for the drivers to be insured; *Id.*, p. 1b-2b

      c.      make and model information on vehicles to be insured; *Id.*, p. 3a-4a

      d.      information on prior claims, accidents, moving violations and vehicle useage; *Id.*, p. 4b-6b

3.      GEICO designated Underwriting Supervisor Christopher Smith as a Rule 30(b)(6) Corporate Representative. During his deposition Mr. Smith admitted:

      a.      GEICO's online application process in March of 2007 did not ask the customer whether they have UM coverage, what their UM limits are, or whether their UM is stacking or non-stacking. Christopher Smith Deposition at DE 43-20,

---

[3] The "Sales Record" is a series of screen captures. They have been filed by GEICO as DE 43-6 with two screen shots per page. The top panel will be referred to as "a" and the bottom panel as "b".

14:18-23 ("C. Smith Depo.")

      b.     Mr. Smith did not know why GEICO did not ask the potential insured whether they currently carried UM. *Id.*, 14:24-15:3

      c.     Mr. Smith admitted that GEICO's online sales process automatically declined UM coverage for Mr. Richard. *Id.*, 32:33-33:3. In order for Mr. Richard to purchase UM coverage from GEICO he would have had to realize the coverage had been automatically declined and then navigate the online screens to find and add UM coverage. *Id.*, 32:8-34:17

      d.     Mr. Smith admitted that Mr. Richard was not shown a selection/rejection (M-9) form during the online application and sales process.[4] *Id.*, 51:15-52:4

      e.     Mr. Smith also admitted that when GEICO issued policy number 4091572919 to Oscar and Traci Richard on March 8, 2007 GEICO did not have a signed M-9 form in its underwriting file. *Id.*, 52:11-21

      4.     GEICO also designated Pamela Bates, IT Manager of Programming

---

[4] GEICO's internal designation for its selection/rejection form is an "M-9". In this case, there are two relevant versions of the M-9 form. The "original M-9" was a paper only form approved by the Florida Office of Insurer Regulation (OIR) in 1997. See DE 45-7, pp. 49-50. The "*revised M-9*" is a reformatted unapproved version of the *M-9* used both in paper and electronic form by GEICO for years before being submitted to the OIR for approval in 2013 and rejected. DE 45-7, pp. 61-62.

Analysis as a Rule 30(b)(6) representative. During her deposition, Mrs. Bates admitted:

a.    GEICO's "signing ceremony" occurs on the customer service platform for GEICO customers whose policies have been issued and delivered. Pamela Bates Deposition at DE 51-2, 22:4-15 ("P. Bates Depo.")

b.    the "signing ceremony" starts with a page providing instructions and advising Mr. Richard that "the option form will be prefilled with the coverage they selected." *Id.*, 33:3-13

c.    Mrs. Bates also admitted that she did not know if the coverages reflected on Mr. Richard's policy declarations page and the *revised M-9* were actually selected by him.[5] *Id.*, 34:5-21 and 47:12-16

d.    the *revised M-9* sent electronically to Mr. Richard was pre-marked to reject UM coverage, he was not required to click the button indicating his selected preference. *Id.*, 46:3-25

e.    GEICO's online process did not allow Mr. Richard to mark the *revised M-9* in a manner indicating his selection of any type of UM coverage. *Id.*, 47:17-22 and 50:8-17

---

[5] Curiously, ¶ 8 of Mrs. Bates' Affidavit (DE 43-3) states that Mr. Richard "confirmed his choice of rejected UM coverage." Curiously, the affidavit is inconsistent with her deposition testimony two weeks earlier.

f.     GEICO fills in the revised M-9 for the insured because it is simply a process that "collects signatures". *Id.*, 51:10-16

g.     Mrs. Bates has no personal knowledge whether the *revised M-9* at issue in this case was ever approved. *Id.*, 56:25-57:7

5.     The *revised M-9* that GEICO relies upon in this case was never approved by the OIR.  GEICO attempted to have its *revised M-9* approved in 2013 after several years of unapproved use, but the OIR rejected the *revised M-9*.  DE 45-7, pp. 12-14, 49-50, 61-62.  The M-9 form that was eventually approved in 2013 by OIR is drastically different from the *revised* M-9 at issue in this case. *Id.*, p. 59-60.

6.     Mr. Richard's annual premium for GEICO policy number 4091572919 without UM coverage was more than what he would have paid to keep his policy at Liberty Mutual with 100/300 in stacking UM. O. Richard Depo., DE 43-5, 45:1-20.

7.     Obviously, had Mr. Richard been aware that switching to GEICO would cost him more money for less coverage, he would have kept his coverage with Liberty Mutual.  *Id.*, 46:2-10.

8.     During the sales process, GEICO's sales agent James Battaglia spoke with Mr. Richard briefly on the telephone before accepting payment.  The only documentation Mr. Battaglia made in the "Sales Record" of his conversation with Mr. Richard is a note indicating that he corrected the date of a claim listed on the

driving history[6]. See Sales Record, DE 43-6, p. 8a; Deposition of Joseph Battaglia, DE 51-1, 20:17-21:7 ("J. Battaglia Depo.")

9.     On March 27, 2011, Nicole Richard was a resident of her father Oscar Richard's household in Lakeland, Florida.  DE 54-1, p. 3.

### III:     Agreed and Controverted Facts Contained in GEICO's Motion

Plaintiff acknowledges the facts GEICO represents in paragraphs 7, 8, 12, 15, 18-20, 22-25 without conceding that the admitted facts carry the significance or impact that GEICO asks the Court to apply to those facts.  Further, Plaintiff disputes the facts as stated by GEICO in the corresponding numbered paragraphs of its motion:

**Paragraph 1:**     Plaintiff agrees that on March 7, 2007, Oscar Richard completed a GEICO application for auto insurance online.  Plaintiff contends that GEICO's "Sales Record"( DE 43-6) is the only reliable evidence of the application process.

**Paragraph 2:**     Plaintiff specifically disputes that GEICO's insurance quote was based on insurance coverage selections that Mr. Richard "made" during

---

[6] GEICO filed an Affidavit of Mr. Battaglia (DE 43-2) that includes specific details of the conversation that Mr. Battaglia purportedly had with Mr. Richard on March 7, 2008.  However, at deposition, Mr. Battaglia admitted having no memory of his conversation with Mr. Richard. Depo. J. Battaglia, DE 51-1, 16:1-11.

the online application process.  As stated infra, Mr. Richard was not asked whether

he currently carried UM coverage, his UM limits, and/or whether the UM coverage

was stacking or non-stacking.  C. Smith Depo. at DE 43-20, 31:21-32:5.

Further, there is no evidence in the "Sales Record" that Mr. Richard was ever

given an "opportunity" to select UM coverage, instead GEICO's computer algorithm

automatically rejected UM for him and came up with a quote.  C. Smith Depo., DE

43-20, 32:23-33:12.  Sales Agent Battaglia also acknowledged at deposition that

there is no evidence in the "Sales Log" that Mr. Richard indicated that he wanted to

reject UM coverage. Depo. J. Battaglia, DE 51-1, 31:9-18.

GEICO's suggestion that Mr. Richard had an "opportunity" to select UM

during the online application process is not supported by the screen shots contained

in its "Sales Record" or any other reliable record evidence.  DE 43-6.

**Paragraph 3:** There is no evidence in the "Sales Record" whether Mr.

Richard called GEICO or vice versa.  Mr. Battaglia acknowledged having no present

memory of the call or the topics that were discussed. Depo. J. Battaglia, DE 51-1,

16:1-11.  Mr. Battaglia acknowledged in his deposition that the "Sales Record" gives

very little insight into his discussion with Mr. Richard. *Id.*, 20:17-20.

**Paragraph 4:** Similarly, there is no evidence that Mr. Battaglia and Mr.

Richard discussed "coverage options, including UM coverage" during the telephone

call.[7]  GEICO attempts to use self-serving affidavits of employees Smith and Battaglia to create a "business practice" out of whole cloth.  At deposition, Mr. Smith conceded that GEICO has no documentation or training manuals from 2007 to support their contentions regarding the call between Mr. Battaglia and Mr. Richard. Depo. C. Smith, DE 45-4, 44:5-22.

**Paragraph 5:** There is also nothing to support GEICO's contention that the availability of UM coverage and/or the need to execute GEICO's *revised M-9* form to confirm rejection of UM coverage was discussed with Mr. Richard before payment was accepted and the policy was bound.  Mr. Battaglia conceded at deposition that he does not recall whether his purported discussion of the M-9 occurred before or after payment.  *Id.*, 41:18-42:1.

Mr. Battaglia admitted during his deposition that he has never asked a prospective Florida GEICO automobile insured to complete an M-9 before accepting payment. *Id.*, 48:7-11.

---

[7] GEICO filed an "Amendment" to the Affidavit of Christopher Smith. DE 48-1. In the amendment, Mr. Smith now states "Mr. Battaglia would have told Mr. Richard that Mr. Richard must complete the M-9 Form by midnight March 7, 2007."  Of course, GEICO's ever-evolving story ignores that Mr. Richard was not sent the M-9 form by GEICO until **after** the policy was issued on March 8.  See DE 45-6, p. 1 (letter dated March 8, 2007) and p. 10-11 (revised M-9 form). The binder materials transmitted by GEICO to Mr. Richard on March 7, 2007 did not include an M-9 form. See DE 43-8.

**Paragraph 6:** This paragraph confirms that GEICO's sales procedure required its agents to bind and issue coverage before the insured was presented with the M-9 selection/rejection form. Further, despite the allegation in this paragraph and Mr. Battaglia's affidavit, there is no evidence in GEICO's "Sales Record" that Mr. Battaglia prepared and relayed a quote to Mr. Richard that included stacking UM coverage. To the contrary, Underwriting Supervisor Christopher Smith conceded at deposition that the "Sales Record" only references a single quote. Depo. C. Smith, DE 43-20, 24:18-25:5.

**Paragraph 9:** GEICO continues to represent to this Court that the policy issued to Mr. Richard reflected his affirmative rejection of UM coverage. To the contrary, the electronic "Sales Record" (as confirmed by the depositions of Mr. Smith and Mr. Battaglia) establishes that GEICO automatically rejected UM coverage for Mr. Richard. *Id.*, 32:33-33:3.

**Paragraph 10:** Once Mr. Richard's policy was issued and delivered electronically, his online communications with GEICO shifted from their "sales platform" to the "customer service platform". The policy package sent from GEICO to Mr. Richard on March 8, 2007, is replete with references to the coverages Mr. Richard allegedly "selected" but contains no specific warnings that GEICO automatically rejected UM coverage for him. Nonetheless, Plaintiff admits that Mr.

10

Richard went online on the evening of March 8 and went through GEICO's M-9 "signing ceremony".

**Paragraph 11:** GEICO has no evidence that the *revised M-9* form utilized in this case was approved by the Office of Insurance Regulation (OIR). The final paragraph of the Affidavit of Danielle Franklin admits that the *revised M-9* at issue is a "reformatted" version of the 1996 original M-9 paper form that the OIR approved. However, GEICO and Ms. Franklin fail to advise this Court that when GEICO submitted the *revised M-9* form utilized in this case to the OIR for approval in 2013, it was rejected. DE 45-7, p. 5-7, 32.

**Paragraph 13:** Once again GEICO play it very fast and loose with its choice of words. GEICO has no evidence that Mr. Richard "reviewed" the *revised M-9* form during the "signing ceremony" memorialized in DE 43-12. In fact, it took Mr. Richard just 37 seconds to progress from the "Complete Required Forms" screen (DE 43-12, p. 2) to the "Consent for Use of Electronic Signatures" screen (DE 43-12, p. 3) to the online M-9 signature page (DE 43-12, p. 5-6) to the "Signature Confirmation" and "Download Signed Form" screens (DE 43-12, p. 7-9). GEICO representative Pamela Bates conceded at her deposition that the insured simply scrolls down to the bottom of the page to click a signing button and that GEICO has no idea of the font size that is viewed by the insured during this process. Depo. P.

Bates, DE 51-2, 39:19-41:2.

**Paragraph 14:** GEICO fails to acknowledge that the welcome letter it sent to Mr. Richard incorrectly advised him that he needed to electronically sign the *revised M-9* to "confirm the coverages he selected." DE 43-15, p. 1.

**Paragraph 16:** GEICO's consent warning page begins: "On the following pages, you will be asked to electronically sign an option form related to **your coverage selections**". DE 43-12, p. 2 (emphasis added). Again, GEICO chose to reject UM for Mr. Richard to show him a lower premium.

**Paragraph 17:** GEICO fails to advise this Court that Mr. Richard did not indicate his "decision to reject UM coverage" on the *revised* M-9. Mr. Richard was not asked to mark the paragraph that confirmed his selection/rejection decision. Depo. P. Bates, DE 51-2, 47:17-22 and 50:8-17. Instead, the online version of GEICO's *revised M-9* was pre-marked to reject UM. *Id.* Mr. Richard could not have indicated his desire to purchase any type of UM coverage on GEICO's online M-9. *Id.* Instead, he would need to exit the process and call the company or go online and change coverages. This defeats the purpose of the written selection/rejection requirement of §627.727(1).

**Paragraph 21:** Again, GEICO chooses to ignore that the letter and policy documents sent to Mr. Richard on March 8, 2007 suggest that the coverages listed

(including the rejection of UM) reflected coverages affirmatively selected by Mr. Richard.

**Paragraph 26:** While not relevant to the issues before this Court, when Mr. Richard went online on April 21, 2012 his intention was to add back the 100/300 in stacking UM coverage that he had carried with Liberty Mutual and that he thought he had with GEICO. GEICO's online policy change process apparently defaulted Mr. Richard to 25/50 in stacking UM. He was then sent a pre-loaded M-9 that he was instructed to sign that confirmed his "choice" of 25/50 stacking UM. Even when Mr. Richard knew what he wanted, GEICO's process would not allow him to get it.

## MEMORANDUM OF LAW

### A. GEICO's Motion for Summary Judgment Must Be Denied Because There Are Contested Issues of Material Fact

Courts uniformly agree that summary judgment *cannot* be granted *unless* the moving party carries its burden of showing the absence of any genuine issue of material fact.[8] Indeed, "[s]ummary judgment should not be granted if there is 'even the slightest doubt' as to whether any genuine issue of material fact exists."[9]

---

[8] *Maronda Homes, Inc. v. Lakeview Reserve Homeowners Association, Inc.*, 127 So.3d 1258, 1268 (Fla. 2013) ("Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."); *McCabe v. Florida Power & Light Co.*, 68 So.3d 995, 997 (Fla. 4th DCA 2011) (same).

[9] *Reed v. Schutz Litigation LLC*, 117 So.3d 486, 488 (Fla. 2nd DCA 2013).

Importantly, a court must consider all facts in the light most favorable to the *non-moving party*.[10] GEICO's Motion for Summary Judgment ignores these inviolable principles by seeking summary judgment in a case replete with material issues of disputed fact. Moreover, rather than portraying the facts in the light most favorable to the Plaintiff, GEICO simply asks this Court to *assume* GEICO's self-serving factual assertions are undisputed.

GEICO asks this Court to grant summary judgment while failing to acknowledge and disclose to the court material facts that are fatal to GEICO's motion. GEICO ignores that its online sales process defaulted to reject UM coverage for Mr. Richard and that Mr. Richard was never presented with a written M-9 form before GEICO accepted payment and issued and delivered the subject policy. GEICO also claims that the *revised M-9* that it relies upon was approved by the Office of Insurer Regulation (OIR) when in fact the revised form at issue in this case was *never* approved by the OIR. Finally, GEICO fails to acknowledge that it tricked Mr. Richard into paying more for a GEICO policy without UM than he would have paid to stay with Liberty Mutual with 100/300 stacking UM coverage.

**B.     Fla. Stat. §627.727 (1) Requires Auto Insurers to Issue Policies With UM Coverage Unless the Carrier Secures a Statutorily Compliant Written Rejection Before the Policy is Issued for Delivery**

---

[10] *McCabe*, 68 So.3d 995 at 997.

GEICO's motion conveniently omits that the primary purpose of Fla. Stat. §627.727(1) (2006) is to ensure that automobile policies issued for delivery in Florida containing bodily injury liability coverage shall also contain uninsured motorist coverage. The statute goes on to provide a mechanism by which an insurer may issue a policy without UM coverage if "an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy." Finally, the statute specifies that the written rejection or selection of lower limits shall be on a form approved by the Office of Insurer Regulation (OIR) and goes on to outline specific language and font requirements that the insurer's form must reflect.[11] Finally, the statute provides that if an approved and compliant form is signed by a named insured, the carrier is entitled to a conclusive presumption that there was a knowing and informed rejection of UM or selection of lower limits.

GEICO's online sales process ignores the statutory requirement that the written selection/rejection of UM coverage must be completed prior to the policy being issued. Here, there is evidence that GEICO's online sales process automatically rejected UM for Mr. Richard and that he was not presented with GEICO's *revised M-9* form until after the policy was issued and delivered to him on

---

[11] GEICO's *revised M-9* does not contain the exact warning language required by the statute. This fact was pointed out to GEICO by OIR when it attempted to have the *revised M-9* approved in 2013. See DE 45-7, p.5, para. 2.

March 8, 2007.

In *Tobin v. Michigan Mutual Ins. Co*., the Florida Supreme Court discussed the requirements of 627.727(1) and held that "If an insurer fails to comply with the statutory requirements, UM/UIM coverage is provided by the contract as though the required coverage had been offered and accepted by the "named insured" as a matter of law." *Tobin*, 948 So.2d 692, 694 (Fla. 2006).[12]

The *Tobin* opinion confirmed the Florida Supreme Court's opinion 16 years earlier in *Quirk v. Anthony* regarding both the purpose and application of the amendments to 627.727(1) that implemented the written notice requirements:

> "First, the nature and extent of the 1982 and 1984 amendments make it apparent that the legislature is attempting to avoid litigation over a "knowing" rejection by placing far greater emphasis and importance upon the written rejection as a self-proving document. Second, the written rejection should make the insurance carrier's task much easier. **If the underwriting file contains a signed rejection, the policy can be issued without UM**. If the insured fails to sign and submit a rejection form, the carrier simply can refuse to issue a policy without UM. Given the relative simplicity of this system, the insurance carrier should not be encouraged by the courts to disregard the written rejection as a technicality." *Quirk v. Anthony*, 563 So.2d 710, 714 (Fla. 1990). (emphasis added)

---

[12] Section F of Defendant's motion argues that Plaintiff's breach of contract action fails as a matter of law because the policy did not include UM coverage at the time of the accident at issue. *Tobin* makes clear that the legal effect of GEICO's failure to comply with the statutory requirements of 627.727 (1) entitles the Plaintiff to UM coverage as a matter of law. Thus, GEICO's argument on this point fails as well.

*Quirk* goes on to confirm ". . .that it is the carrier's burden to prove that the named insured made the knowing rejection of UM coverage **before the policy was delivered**." *Quirk*, at p. 715, FN. 4. (emphasis added)

Given GEICO's decision to automatically reject UM coverage for Mr. Richard without any corresponding effort to satisfy the written requirements of 627.727(1) before issuing and delivering the policy of insurance to him, there is a factual basis for this Court to find that UM coverage is provided under GEICO's policy as a matter of law. This leaves GEICO with the burden of establishing that a knowing policy change occurred after delivery of the policy. On this basis alone, GEICO's Motion for Final Summary Judgment must be denied.

## C.     The GEICO *Revised M9* Form Was Never Approved by the OIR[13]

GEICO's Motion for Final Summary Judgment is premised on its representation that the online version of its *revised M-9* form was approved by the OIR. It was not.

The *revised M-9* Form GEICO utilized in this case does bear the notation "M-9-FL (11-96)" in the bottom left corner of each page. See DE 43-13, p. 1 and 2.

---

[13] Plaintiff filed a Motion for Partial Summary Judgment (DE 47) asking the Court to find as a matter of law that the *revised M-9* was never approved by the OIR. Even if the court chooses to deny Plaintiff's motion on this issue, GEICO's motion must similarly fail and this issue of material fact should be resolved at trial.

GEICO asks this court to accept that the *revised M-9* at issue was approved simply because it denotes the form with the same designation as the original version of the M-9 that was approved by the OIR in 1997. Compare DE 43-10, p. 3-4 and DE 43-13. But, while the forms appear to be similar, they are indeed quite different. The font size is different and the original approved M-9 contains 4 numbered paragraphs at the bottom of the first page (DE 43-9, p. 7), while the *revised M-9* used in this case has just 1 numbered paragraph at the bottom of the first page (DE. 43-13, p. 1). Thus, the forms are indisputably different.

GEICO offers the Affidavit of Danielle Franklin[14] (DE. 43-4) in support of its premise that the *revised M-9* was OIR approved. However, paragraph 11 of Ms. Franklin's affidavit she acknowledges that the *revised M-9* was "reformatted for electronic use." DE 43-4, p. 3.

GEICO asks this court to ignore its "reformatting" of the *revised M-9* and to further assume that had GEICO properly chosen to seek OIR approval of its "reformatting" that the revised version would have been met with approval. However, GEICO fails to disclose that it tried to get the *revised M-9* at issue approved by the OIR in 2013. DE 45-7. More significantly, GEICO fails to

---

[14] Danielle Franklin was not disclosed by GEICO as a witness with knowledge of the issues in this case and was therefore never deposed.

acknowledge to this Court that the OIR refused to approve the *revised M-9* at issue here without significant modifications necessary to comply with §627.727(1). *Id.,* p. 12-14.

The online version of the *revised M-9* has radio buttons that the insured could ostensibly "click" on to mark their selection. However, GEICO has also failed to disclose to this Court that its online *revised M-9* was sent to Mr. Richard pre-marked with the radio button rejecting UM coverage in its entirety marked. In addition, discovery has revealed that Mr. Richard was unable to choose and mark his own selection of UM coverage, *thwarting the very purpose of the form.*

Several times in its motion, GEICO refers to *Brannan v. GEICO Indem. Co.*, 569 Fed. Appx. 724, 727 (11ᵗʰ Cir. 2014) and *Schabo v. GEICO Gen. Ins. Co.*, Case No. 06-61906-CIV Cooke/Brown, DE 59 (S.D. Fla. Jan. 18, 2008), *aff'd*, No. 08-10632 (11ᵗʰ Cir. July 10, 2008) and suggests to this Court that the M-9 forms at issue in those cases are the same as the forms utilized in this case. First, both *Brannan* and *Schabo* involved "paper" versions of the *revised M-9* ostensibly filled out by GEICO's insureds prior to policy delivery. See DE 51-4, p. 14-15 and 51-5. Next, it is unclear how GEICO convinced the judges in those cases that the *revised M-9* was approved by the OIR when it was never approved.

In *Schabo*, the affidavit of GEICO Risk Manager Tim Wander (DE 51-4, p.2, ¶10) states that "the M-9 form at issue in the above-captioned law suit. . .is the same form as was approved by the Florida Department of Insurance…" Clearly, this is a false statement. To the extent that the *Schabo* court relied upon the false statement of GEICO's Risk Manager, it should have no precedential value.

Further, a careful reading of GEICO's Motion for Summary Judgment in *Brannan* reveals that GEICO's counsel was careful not to represent that the paper version of the *revised M-9* (DE 51-5) had been <u>approved by OIR</u>, instead carefully (and deceptively) stating that the *revised M-9* "was in language approved by OIR". *Brannan v. GEICO*, Case No.: 1:12-cv-00238-MP-GRJ, DE 104, p. 7, 13. Interestingly, the 11th Circuit's unpublished opinion incorrectly states that the *revised M-9* Mr. Brannan signed in 2009 was the same M-9 that was approved in 1997. It seems that GEICO's counsel chose not to correct the misperception of both the trial and appellate courts that the *revised M-9* form signed by Mr. Brannan was approved by the OIR.

Finally, GEICO's Motion also cites *Coccaro v. Geico General Ins. Co.*, 648 Fed. Appx. 876 (11th Cir. 2016), yet GEICO fails to acknowledge that in *Coccaro* the 11th Circuit noted that the OIR rejected the *revised M-9* when it was finally submitted for OIR approval in 2013. *Coccaro*, at 878.

There is clearly a disputed issue of material fact as to whether the *revised M-9* was ever expressly or implicitly approved by OIR.

**D. Because GEICO's Revised M-9 was Both Unapproved and Non-Compliant, It is Null and Void**

Since GEICO's *revised M-9* form was *not* approved by the OIR, it is null and void. *See e.g.,* Fla. Stat. s.627.410 (1) ("A basic insurance policy. . .or endorsement form. . .may not be delivered or issued for delivery in this state unless the form has been filed with the office…and has been approved by the office."); *American Mutual Fire Ins. Co. v. Illingworth*, 213 So.2d 747, 749-750 (Fla. 2nd DCA 1968) ("Because the endorsement form [purporting to exclude coverage] was not approved by the insurance commissioner then any endorsement written on the unapproved form must be rendered void. If the form is not approved, then the endorsement written on it in favor of the [insurer] must be in effect null and void.")

**E. GEICO Cannot Rely on the Electronic Transaction Statutes to Excuse Non-Compliance With 627.727(1)**

GEICO cites Florida's "Electronic Signature Act of 1996" and "Uniform Electronic Transaction Act (UETA)" yet fails to acknowledge the section of UETA that provides: "if a provision of law other than this section requires a record to be posted or displayed in a certain manner…the record must be posted or displayed in the manner specified in the other provisions of law." Fla. Stat. §668.50(8)(b)(1).

Section (8)(b)(3) goes on to state "the record must contain the information formatted in the manner specific in the other provision of law."

Here, GEICO's IT Manager Pamela Bates conceded that she has no way to know if Mr. Richard viewed the *revised M-9* on a monitor that displayed the form in a manner that met §627.727's 12 point font requirements. Depo. P. Bates, DE 51-2, 40:3-41:2. As such, there is no way for GEICO to meet its burden of proving compliance with the font requirements of the statute.

Similarly, the electronic version of GEICO's *revised M-9* is formatted differently than the paper version in that it does not require (or allow) the insured to mark their selection or rejection of UM coverage on the form. Instead the electronic M-9 is sent to the insured "pre-marked" by GEICO. This would seem to be a clear difference in the "format" of the electronically submitted information. When read carefully, UETA does not support GEICO's position but instead further weakens it.

There is a disputed issue of material fact as to whether the electronic version of the *revised M-9* complies with 627.727(1) and UETA when it does not allow the insured to make a selection on the form.

### F. GEICO's Policy Renewal Notices After March 8, 2007 Cannot Form the Basis for A Waiver of UM Coverage

GEICO claims that it can ignore the strict requirements of §627.727(1) by relying on its subsequent renewal notices. To support this premise, GEICO cites

*Marchesano v. Nationwide Prop. & Casualty Ins. Co.*, 506 So.2d 410 (Fla. 1987).

Of course, GEICO neglects to note that the 1982 version of 627.727(1) addressed in

*Marchesano* pre-dated the 1987 amendment of the statute to state that an insured's

receipt of an annual renewal notice "…does not constitute an affirmative waiver of

the insured's right to uninsured motorist coverage where the insured has not signed a

selection or rejection form."

    GEICO also half-heartedly cites *Chmieloski v. National Union Fire Ins. Co. of*

*Pittsburgh, Pennsylvania,* 562 So2d 164 (Fla. 2nd DCA 1990). The Court in

*Chmieloski* was considering the 1983 version of §627.727 (1) which also predated

the amendment that includes the language cited above.

    Finally, GEICO's reliance on the 11th Circuit's unpublished opinion in

*Coccaro* is also unfounded (and misleading) as the quoted comment of the 11th

Circuit cited in their motion is referring to the issue of "future injury in fact" in a

class action context.  When read in context the quoted passage merely confirms the

obvious-that an insured who has "discovered" the carrier's failure to comply with

627.727(1) will not have a "future injury in fact" because future renewals could no

longer be considered uninformed.

    GEICO's eight policy renewals do not cure its failure to comply with

627.727(1) at the time the policy was issued for delivery without a compliant

selection/rejection form on file.

**G.    A Reasonable Fact Finder Could Conclude that Oscar Richard Was Tricked Into Signing GEICO's *Revised M-9* Form**

Even assuming arguendo that GEICO can rely on Mr. Richard's electronic

signature on the *revised M-9* form, the Plaintiff should still have the opportunity to

prove trickery.

GEICO made a conscious business decision to replace the UM

selection/rejection process outlined in Fla. Stat. 627.727(1) with its own self-serving

process.  GEICO's process allows them to automatically drop UM coverage for a

potential insured to deliver the "savings of 15% or more" that is the cornerstone of its

marketing campaigns.  However, in doing so, GEICO wholly ignores (and tramples

on) an insured's right under §627.727 (1) to UM coverage unless the insured makes a

**knowing and informed written rejection** of UM coverage prior to paying for and

receiving delivery of the insurance policy.

GEICO's online process in this case:  (i) asked Mr. Richard if he carried BI

coverage but did not ask about UM; (ii) the resulting premium quote provided to Mr.

Richard automatically rejected UM coverage; (iii) GEICO did not present Mr.

Richard with a written selection/rejection form prior to policy payment and delivery;

(iv) relies wholly on the self-serving affidavits and testimony of a sales agents whose

testimony is used as a substitute for the written waiver requirement of 627.727 (1);

and (v) prior to the online "signing ceremony" GEICO told Mr. Richard he was "confirming" his policy selection (rejecting UM) when GEICO made that selection for the him without his knowledge. GEICO's entire online process serves their goal of delivering a lower quoted premium and getting the customer to switch to GEICO while completely ignoring the legal requirements of 627.727(1).

GEICO's response to the charge of trickery is, if nothing else, consistent with the other unsupported positions they take in their motion and in this litigation: (i) GEICO's online process did not automatically reject UM coverage; (ii) a GEICO representative spoke with Mr. Richard and recommended that he add the UM coverage GEICO had already rejected for him; and (iii) GEICO's online process does not rise to the level of deceit, trickery or cheating.

### 1. GEICO's Online Process Automatically Rejected UM Coverage for Oscar Richard

GEICO's Underwriting Manager Chris Smith acknowledged in deposition that GEICO's online sales process automatically declined UM coverage when Mr. Richard's quote was prepared. GEICO responds by suggesting (without proof)[15] that their online process allowed Mr. Richard to affirmatively select UM coverage. More

---

[15] In both his deposition and his affidavits, Underwriting Manager Chris Smith states that Mr. Richard "had an opportunity to select UM coverage". Yet GEICO has produced no screen shots or other record evidence to illustrate how Mr. Richard would have been able to select UM coverage.

importantly, GEICO's position on this issue proves that they place the responsibility on the potential insured to affirmatively select UM coverage when §627.727 (1) places the burden on the insurer to provide UM coverage <u>unless</u> the insured <u>knowingly rejects UM in writing.</u>

GEICO's online system completely ignores its obligations under 627.727(1). Rather than defaulting to include UM and giving the insured the option of making a knowing and informed written rejection of UM coverage, GEICO does the opposite. GEICO defaults to automatically reject UM coverage for the insured. Having done so, GEICO then ignores the knowing and informed written rejection requirement and issues their policies with neither the required UM coverage, nor the written rejection.

**2.    GEICO Claims its Sales Agent "Recommended" UM Coverage**

After automatically rejecting UM coverage for Mr. Richard and then ignoring the written rejection requirement of §627.727(1), GEICO now wants to avoid the consequences of ignoring the plain requirements of the statute by claiming (again without documentation), that Sales Agent Battaglia "recommended" that Mr. Richard purchase UM coverage either immediately before or after accepting payment for the policy. Even before §627.727(1) was amended to include the strict written selection/rejection requirements, Florida Courts held that a carrier could not rely on "general, routine office practice and not upon an independent recollection of a

specific rejection." *Auger v. State Farm Mutual Automobile Ins. Co.*, 516 So.2d 1024, 1026 (Fla. 2d DCA 1987) quoting *Travelers Ins. Co. v. Spencer,* 397 So.2d 358, 361 (Fla. 1st DCA 1981). Here, Sales Agent Battaglia understandably has no memory of a telephone call made nearly 10 years ago. GEICO's self-serving (yet unsupported) business practice theory does not meet their burden in a summary judgment context. This is clearly a disputed issue of fact.

**3.     Whether GEICO Engaged In Trickery is a Question of Fact**

Plaintiff agrees that no Florida State or Federal Court has authored a specific definition of "trickery" in the context of Fla. Stat. §627.727 (1). However, under the very definitions GEICO proposes, "trickery" would include "the use of subterfuge or stratagems to deceive" or "the practice of crafty underhanded ingenuity to deceive or cheat" or "intentional deception to cause a person to give up property or some lawful right". It is hard to think of any other term than "trickery" for what GEICO did to Mr. Richard through its online sales process.

GEICO used its superior knowledge and bargaining position to automatically reject UM coverage for Mr. Richard and induce him into paying <u>more</u> for a GEICO policy of insurance <u>without UM</u> coverage than he would have paid to stay with Liberty Mutual with <u>stacking 100/300 UM</u>.

In looking at the evidence in the light most favorable to the Plaintiff, on March

27

7, 2007, Mr. Richard had been a satisfied Liberty Mutual auto insurance customer for over 9 years. He moved from Ohio to Florida and kept his Liberty Mutual coverage in place with stacking UM equal to his BI limits. GEICO wants this Court to believe that Oscar Richard made a knowing and informed decision to switch from Liberty Mutual to GEICO by agreeing to pay more in annual premium for a policy that did not include UM. Of course, GEICO ignores the fact that the policy it sold to Mr. Richard without UM cost more than his Liberty Mutual policy would have cost with stacking UM. GEICO has to ignore this fact to argue that the evidence is insufficient to prove "trickery" because they know full well than no customer would ever agree to switch to GEICO if they knew they were paying more premium for significantly less coverage. The facts of this case easily meet any reasonable definition of "trickery".

### H. GEICO Is Not Entitled to the Oral Waiver Defense

Having knowingly established a sales process that thwarts the intent of §627.727(1), GEICO should not be permitted to rely on an alleged oral waiver as a basis to deny UM coverage.

GEICO has, of course, tried to introduce the "oral waiver" defense into this case to excuse its complete failure to comply with the plain requirements of Fla. Stat. §627.727. But the unambiguous language of §627.727(1) and (9), establishes

that, unless the named insured is provided statutory notice and makes a written rejection on a form approved by the State of Florida, an insurer must provide "full" UM coverage to the insured (stacked UM Coverage where the named insureds have two or more covered vehicles). *See Belmont v. Allstate Ins. Co.*, 721 So.2d 436, 438 (Fla. 5th DCA 1998) (holding that, if an insured does not sign a form that is approved by the office, the insured is entitled to "full" UM coverage, and that "full" coverage includes stacking) (citing *GEICO v. Douglas*, 654 So.2d 118 (Fla. 1995)). Thus, the default coverage is stacked UM.

Florida's Third District set forth this principle in following the plain language of the statute:

> Section 627.727(1) of the Florida Statutes requires every motor vehicle liability insurance policy providing for bodily injury coverage to include uninsured motor vehicle coverage unless the insured has rejected that coverage in writing. § 627.727(1), Fla. Stat. (2003). **Because Anatkov did not reject UM/UIM coverage in writing, he was entitled to this coverage by operation of law.** See Quirk v. Anthony, 563 So.2d 710, 714 (Fla. 2d DCA 1990), approved, 583 So.2d 1026 ("If the underwriting file contains a signed rejection, a policy can be issued without UM. If the insured fails to sign and submit a rejection form, the carrier simply can refuse to issue a policy without UM.").

*Mercury Ins. Co. of Florida v. Anatkov*, 929 So.2d 624, 626-27 (Fla. 3d DCA 2006) (**emphasis added**); *see also* §627.727(1) and (9). In *Anatkov*, the named insured brought a claim for UM benefits, and the appellate court held he was

entitled to these benefits "by operation of law" where there was no evidence of a written rejection of UM coverage, pursuant to the plain language of the statute.[16]

*GEICO v. Douglas*, 627 So.2d 102 (Fla. 4th DCA 1993), *approved by GEICO v. Douglas*, 654 So.2d 119 (Fla. 1995) further shows that the statute is intended and provides that Class I insureds are entitled to full UM coverage when insurance companies fail to secure rejections of UM (or rejections of stacked UM) in writing.[17] The Fourth District and Florida Supreme Court did not hold that an oral waiver defense was available as a fallback.

In *Douglas*, the Fourth District examined whether the named insured, (specifically referred to as a "Class I" insured in the opinion), was entitled to UM coverage for injuries sustained in a vehicle owned by him, but insured under the subject policy. GEICO asserted there was no available coverage under the policy, and where the insured obtained coverage for the vehicle with a different insurance carrier. The Fourth District rejected GEICO's arguments based on the *statutory*

---

[16] Like the insurer in *Anatkov*, GEICO cries foul because Mr. Richard did not pay premiums for UM coverage. However, the Court in *Anatkov* clearly found that no payment of UM premium is necessary since the coverage is provided as a matter of law due to the carrier's non-compliance. *Anatkov*, 929 So.2d at 627.

[17] As a resident relative of Oscar Richard's household, Plaintiff Nicole Richard is a Class I insured as defined by Section IV (UM) of GEICO's policy. See DE 43-15, p. 26 ("Insured" means: (b) relatives of (named insured) above if residents of his household.)

notice requirements required under 627.727.

The court specifically addressed the impact of a statutory provision under subsection (9), which did authorize insurance carriers to not provide this UM coverage. However, as the Fourth District explained, "pursuant to this statute, to limit coverage validly, **the insurer must first satisfy the statutorily mandated requirements of notice to the insured** and obtain a knowing acceptance of the limited coverage." 627 So.2d. at 103 (**emphasis added**). Here, GEICO fails to present evidence that it informed the insured of the availability of UM coverage or to obtain a knowing acceptance of limited coverage as required by section 627.727(9). *Id.* Because of the failure to comply with the statutory mandated requirements of notice, the Fourth District held the insured was entitled to full coverage. The appellate court added that, "If the policy exclusion is valid despite **noncompliance with the statute,** the provision of section 627.727(9)(d) would be rendered meaningless." *Id*. (**emphasis added**). Again, the Court did not suggest oral waiver could be an end-around the plain language of the statute.

The Florida Supreme Court then approved the Fourth District's *Douglas* decision. As the Supreme Court explained, 654 So.2d at 120-21 (emphasis added):

> As recognized by the Fourth District Court of Appeal, to limit coverage validly, the insurer must satisfy the statutorily-mandated requirement of notice to the insured and obtain a knowing acceptance of the limited coverage. . .

It is our opinion that these requirements were the **quid pro quo** given by the legislature to insurers for the right to limit uninsured motorist coverage by this exclusion. As further recognized by the Fourth District in its opinion in this case, **if the policy exclusion is valid despite noncompliance with the statute, the provision of section 627.727(9)(d) is rendered meaningless**.

Section 627.727(9)(d) was applicable in this instance and the insurer, GEICO, was found not to have complied with the statute. The Fourth District, therefore, quite correctly held that the insured was covered under the uninsured motorist provisions of the GEICO policy. We approve that decision.

(**Emphasis added**.)

And, again, our state Supreme Court was clear that the "quid pro quo" for an insurance carrier's failure to provide the statutory notice and obtain the statutorily mandated written rejection on a State-approved form from a Class I insured was full coverage; it did not carve out an alternative oral waiver end-around of the statute. Instead, both the Fourth District and Florida Supreme Court expressly clarified that if full coverage was not what the named insured got in return for the insurers failure to abide by the statue, §627.727 would be "rendered meaningless". That is to say, the enactment of the statutory notice requirements in 1982 and 1984 guided the Fourth District and Supreme Court's straightforward conclusions in *Douglas*.

Yet, in this case, GEICO urges this Court to render the mandates of §627.727 meaningless, precisely what the Fourth District and Florida Supreme Court warn against. Certainly, the mandatory precedent of *Douglas* (both the Fourth District's and Florida Supreme Court's opinions) preclude this Court from allowing that result.

Finally, *Auger*, infra, precludes GEICO from establishing an oral rejection via self-serving general business practices rather than evidence of the specific transaction at issue.

## CONCLUSION

For all of the reasons stated herein, Plaintiff respectfully requests that the Court deny GEICO's Motion for Final Summary Judgment and allow the matter to proceed to trial on the merits.

## Local Rule 7.1(F) Certification

This motion contains 6,944 words and undersigned calculated the word count at the time of filing using Microsoft Word's word count tool.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of November, 2016 a true and correct copy of the foregoing has been electronically filed with the Clerk of Court by using the **CM/ECF eFiling** system which will automatically electronically furnish a copy to: Frank A. Zacherl, Esq. ([fzacherl@shutts.com](mailto:fzacherl@shutts.com)); Brad Redlien,

Esq. (bredlien@shutts.com) Shutts & Bowen, LLP.

**DELLECKER WILSON KING**
**McKENNA RUFFIER & SOS**
**A Limited Liability Partnership**

BY: */s/ Kenneth J. McKenna*
 Kenneth J. McKenna
 Florida Bar No. 0024248
 719 Vassar Street
 Orlando, Florida  32804
 Phone: 407-244-3000
 Fax: 407-244-3033
 KJMeservice@dwklaw.com