UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**NICOLE RICHARD,**          CASE NO.: 4:16-cv-00184-MW-CAS

      **Plaintiff,**

-vs.-

**GOVERNMENT EMPLOYEES
INSURANCE COMPANY, a
foreign corporation**

      **Defendant.**
_____/

## PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, NICOLE RICHARD, pursuant to Rule 56, Fed.R.Civ.P., Local Rule 56.1, and the Court's Order Requiring Supplemental Briefing on Summary Judgment [DE 145], renews her prior motion for partial summary judgment and states:

### I:   INTRODUCTION

Plaintiff adopts and incorporates by reference her Motion for Partial Summary Judgment (DE 47), Reply to GEICO's Response to Motion for Partial Summary Judgment (DE 56), and her Response in Opposition to GEICO's Motion for Final Summary Judgment (DE 55).

This Renewed Motion for Partial Summary Judgment will not reargue the issue of the M-9 waiver form's non-compliance with the statute and lack of approval by OIR as this issue has been addressed in the Court's Order Denying Defendant's Motion for Summary Judgment and Granting In Part and Denying In Part Plaintiff's Motion for Partial Summary Judgment (DE 73). However, this renewed motion does ask the Court to find that the non-compliant waiver form is also void as a matter of law.

GEICO has argued throughout this case that despite intentional non-compliance with the written waiver requirements of 627.727, it is still permitted to establish the defense of an oral waiver.[1] The Fourth District's recent opinion in *Jervis v. Castaneda*, No. 4D17-332, 2018 WL 1952980 (Fla. 4th DCA Apr. 25, 2018) establishes that Florida law does not allow an insurance company that fails to comply with the written notice requirements of section 627.727(1) &(9), Florida Statutes (2010)[2] to establish that an insured orally rejected UM coverage. Application of the rule of law in *Jervis* requires this Court to grant Plaintiff's

---

[1] In this case, GEICO convinced the Court to allow evidence of oral waiver occurring after delivery of the policy. In *Jervis*, GEICO conceded to the 4th DCA in its briefing that if an oral waiver defense were permitted, the oral waiver would need to occur before delivery of the policy. (DE 149-2, pp. 20, 23-24,43)

[2] While *Jervis* addresses the 2010 version of 627.727, the 2006 version of the statute applies here. However, as it relates to the issues in this case the 2006 and 2010 versions of 627.727 are identical.

Motion for Partial Summary Judgment and find that Mr. Richard's GEICO policy provides $100,000/$300,000 in stacking UM coverage for the subject loss.

## II.   STATEMENT OF FACTS[3]

1. This action is a claim for uninsured/underinsured motorist benefits arising out of a contract of personal automobile insurance issued by GEICO to Oscar Richard on March 8, 2007 bearing policy number 4091572919.

2. Plaintiff, Nicole Richard, at all times material hereto, was the daughter of Oscar Richard and a permanent resident of his household and therefore a Class I insured.

3. On March 7, 2007 Oscar Richard maintained his personal automobile liability insurance through Liberty Mutual under policy number A06-258-516869-106 4 with an annual premium of $3,184.  Mr. Richard's coverages with Liberty Mutual included $100,000/$300,000 bodily injury (BI) limits and stacking uninsured motorist (UM) coverage limits of $100,000/$300,000. (DE 45-2, pp. 65-68).

4. Oscar Richard went to GEICO's online sales platform on March 7, 2007 and applied for an automobile insurance quote.  His son had recently turned 16 and

---

[3] All exhibits referenced shall be identified by their docket entry number (DE) and corresponding page number.  Depositions filed as exhibits will reference the docket entry and the page and line number in the deposition transcript as some of the depositions are filed in condensed format.

he was advised by Liberty Mutual that his premiums would increase by $1,000 annually when his son was added to their policy. Deposition of Oscar Richard (DE 43-5, p. 6:10-7:15).

5. Mr. Richard's interaction and inputs into the GEICO website are documented in screen shots that GEICO calls the "sales record". (DE 43-6)[4] The first 18 screen shots of the GEICO "sales record" show that Mr. Richard was asked:

    a. to provide the name of his current auto insurer and his bodily injury (BI) limits. (DE 43-6, p. 1a);

    b. identifying information for the three drivers who will be insured; (*Id.*, p. 1b-2b)

    c. make and model information on the three vehicles to be insured; (*Id.*, p. 3a-4a)

    d. information on prior claims, accidents, moving violations and vehicle usage; (*Id.*, p. 4b-6b)

6. GEICO designated Underwriting Supervisor Chris Smith as a Corporate Representative. Mr. Smith's deposition testimony included testimony that:

    a. GEICO's online application process in March of 2007 did not ask the customer whether they have UM coverage, what their UM limits are or

---

[4] The "sales record" is a series of screen captures. They have been filed as DE 43-6 with two screen shots per page. The top panel will be referred to as "a" and the bottom panel as "b".

whether their UM is stacking or non-stacking. Christopher Smith Deposition (DE 45-4, p. 14:18-23);

b. Mr. Smith did not know why GEICO did not ask the potential insured whether they currently carried UM. (*Id.* 14:24-15:3);

c. Mr. Smith admitted that GEICO's online sales process automatically declined UM coverage for Mr. Richard. The only way for Mr. Richard to purchase UM coverage from GEICO is if he affirmatively finds the correct drop down and adds UM coverage. (*Id.* 45-4, p. 32:8- 34:17);

d. Mr. Smith admitted that Mr. Richard was never shown the electronic M9 waiver form during the online application and sales process. (*Id.* 45-4, p. 51:15-52:4);

e. Finally, Mr. Smith admitted that when GEICO issued policy number 4091572919 to Oscar and Traci Richard at 12:01 a.m. on March 8, 2007, GEICO did not have a signed M9 form in its underwriting file. (*Id.* 45-4, p. 52:11-21).

7. After the policy was issued and delivered without UM coverage, Mr. Richard was sent an email regarding the e-signature process. (DE 149-1)

8. On March 8, 2007, GEICO mailed a 35-page package of policy documents for delivery to Oscar Richard. This package included a welcome letter,

insurance application, ID cards, coverage declarations, an unsigned M9[5] form, surcharge notice, privacy notice, Florida Family Automobile Insurance Policy, Auto Policy Amendments and a Loss Payable Clause. (DE 45-6).

### III: ARGUMENT

#### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

*United States v. Kermali*, 60 F.Supp 3d 1280, *1 (M.D. Fla. 2014) (footnote omitted). *Accord, e.g., Thompson v. Cincinnati Ins. Co.*, 2011 WL 1374982, *1 (N.D. Fla. 2011).

#### B. *Jervis* confirms that the plain language of 627.727(1) requires a written waiver of UM coverage before the policy is issued.

In *Jervis*, as in this case, GEICO argued that non-compliance with the clear and strict written waiver requirements of 627.727 has no consequence because an insurance carrier may still establish an oral waiver of UM coverage. *Jervis*, 2018 WL1952920, *1-2. The *Jervis* Court expressly and completely rejected GEICO's

---

[5] GEICO's internal reference or name for its Florida UM selection rejection form.

argument, instead holding "that the failure to serve the mandatory notice precludes the insurance company from claiming that the insured orally made a knowing choice regarding the stacking of UM coverage.[6]" *Id.* *1,2

The *Jervis* opinion highlights the statutory language in 627.727(1) that establishes the mandatory procedure for an insured's rejection of UM coverage:

> The rejection or selection of lower limits ***shall*** be made on a form approved by the office. The form ***shall*** fully advise the applicant of the nature of the coverage and ***shall*** state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form ***shall*** be in 12-point bold type and ***shall*** state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds. The insurer ***shall*** notify the named insured at least annually of her or his options as to the coverage required by this section. Such notice ***shall*** be part of, and attached to, the notice of premium, ***shall*** provide for a means to allow the insured to request such coverage, and ***shall*** be given in a manner approved by the office. Receipt of this notice does not constitute an affirmative waiver of the insured's right to uninsured motorist coverage where the insured has not signed a selection or rejection form.

*Id.* *1,2 (emphasis in original).

---

[6] While *Jervis* involves the stacking (UM) coverage under 627.727(9), the language of 627.727(1) involving rejection of UM coverage in its entirety is referenced and relied upon in *Jervis* and applies equally (if not more) in a scenario involving the total rejection of UM coverage.

The *Jervis* opinion goes on to note the nine "shalls" in the above-quoted section of 627.727(1) "lead to the conclusion that the written notice is a mandatory prerequisite to an insured's waiver of the right to UM coverage." *Id.*

The *Jervis* Court notes that the mandatory notice requirement was described 25 years earlier by the Fourth DCA in *Government Employees Ins. Co. v. Douglas*, 627 So.2d 102, 103 (Fla. 4th DCA 1993) which stated, "pursuant to [section 627.727] to limit coverage validly, *the insurer must first satisfy the statutorily mandated requirements of notice to the insured* and obtain a knowing acceptance of the limited coverage." (Emphasis added in *Jervis* *2). The Florida Supreme Court affirmed *Dougla*s and cited the same language quoted above. *Government Employees Ins. Co. v. Douglas*, 654 So.2d 188, 120-121 (Fla. 1995).

The *Douglas* opinion is one of a series of cases from the Florida Supreme Court that address Fla. Stat. 627.727(1) which strongly indicate that the Florida Supreme Court would not decide this issue any differently than the Fourth DCA did in *Jervis*.

In *Tobin v. Michigan Mutual Ins. Co.*, the Florida Supreme Court discussed the requirements of 627.727(1) and held that "If an insurer fails to comply with the statutory requirements, UM/UIM coverage is provided by the contract as though the

required coverage had been offered and accepted by the "named insured" as a matter of law." 948 So.2d 692, 694 (Fla. 2006).

The *Tobin* opinion confirmed the Florida Supreme Court's statement 16 years earlier in *Quirk v. Anthony* regarding the purpose and application amendments to 627.727(1) that implemented the written notice requirements:

> First, the nature and extent of the 1982 and 1984 amendments make it apparent that the legislature is attempting to avoid litigation over a "knowing" rejection by placing far greater emphasis and importance upon the written rejection as a self-proving document. Second, the written rejection should make the insurance carrier's task much easier.  If the underwriting file contains a signed rejection, the policy can be issued without UM.  If the insured fails to sign and submit a rejection form, the carrier simply can refuse to issue a policy without UM.  Given the relative simplicity of this system, the insurance carrier should not be encouraged by the courts to disregard the written rejection as a technicality.

*Quirk v. Anthony*, 563 So.2d 710, 714 (Fla. 1990).  The *Quirk* opinion goes on to confirm ". . .that it is the carrier's burden to prove that the named insured made the knowing rejection of UM coverage before the policy was delivered." *Quirk*, at p. 715 FN. 4.

In attempting to distinguish *Jervis* GEICO will undoubtedly point out that this Court did not "void" the M-9 waiver form in this case (DE 73).  Even if the Court does not accept Plaintiff's request to "void" GEICO's non-compliant, unapproved form, it does not alter the application of *Jervis*.  The *Jervis* court noted "Geico's notice was void, which means that, in the eyes of the law, there was no section 627.727 notice at all." *Jervis*, 2018 WL 1952980 at*3.  In this case, there

was also no section 627.727 notice at all because the uncontroverted evidence establishes that the waiver form was not presented or even made available to Mr. Richard until after the policy was issued.

As such, under *Jervis,* Mr. Richard is entitled to stacked UM coverage. *See, also, Mercury Insurance Co. of Florida v. Anatkov,* 929 So.2d 624 (Fla. 3d DCA 2006) ("Because Anatkov [a Class I insured] did not reject UM/UIM coverage in writing, he was entitled to coverage by operation of law.") Plaintiff is entitled to Partial Summary Judgment finding that there is $100,000/$300,000 in stacking UM coverage available for the subject loss.  "To allow an insurance company to prove that an insured orally and knowingly rejected stacked coverage in the absence of the statutory notice would undermine the legislature's determination that such written notice is mandatory." *Jervis*, at *3.

Finally, the *Jervis* court was obviously troubled by GEICO's systemic and intentional disregard for the written notice requirements of 627.727.  *Jervis* does not involve a situation where a signed form was misplaced by the carrier or discarded due to the passage of time.  Instead, *Jervis* is the legal system's rebuke of GEICO's conscious disregard for the legal requirements of 627.727.

The first sentence of the *Jervis* opinion frames the issue in the context of "an insurance company that completely fails to comply with the written notice provisions of section 627.727(1) & (9)".  The *Jervis* opinion goes on to focus on

GEICO's complete failure to provide the required 627.727 notice prior to delivery of the policy as the key factor in determining that the insured is entitled to full UM coverage as a matter of law. Cite

GEICO's willful disregard of the 627.727 requirements is even more fully developed in the record in this case. In 2007, when GEICO sold Mr. Richard his policy, GEICO's online process automatically rejected UM coverage despite the fact that he was purchasing 100/300 BI coverage. Yet, GEICO's process never even attempted to present a written notice even arguably compliant with 627.727 until after the policy was sold and issued for delivery.[7]

GEICO brought this problem upon itself by willfully ignoring 627.727 to sell policies that appear to have lower premiums when in fact they just have less coverage.

    **C.    The cases GEICO cites in favor of oral waiver do not conflict with *Jervis*.**

The case law GEICO frequently cites as allowing insurers to prove a knowing, oral waiver in the absence of a statutorily-mandated written rejection of

---

[7] In support of its own Motion for Summary Judgment, GEICO filed an Affidavit of sales agent James Battaglia (DE 43-2) that suggests that during their March 7, 2007 call, Mr. Battaglia told Mr. Richard he was being sent an M9 form that he needed to executed before midnight or his policy would be issued with stacking UM. The available evidence confirms that the M9 form was not emailed to Mr. Richard until March 8 after the policy was issued (DE 149-1). And of course, the GEICO policy was issued without UM, leaving one wondering whether Mr. Battaglia's affidavit was submitted in a desperate attempt to show some effort to comply with 627.727.

UM coverage either involve Class II insureds or involve versions of 627.727 prior to the 1984 amendments[8].

The case most frequently cited by GEICO to erroneously claim the right to establish an oral rejection in any situation is *Union American Ins. Co. v. Cabrera*, 721 So.2d 313 (Fla. 3d DCA 1998).[9]  However, upon careful reading, the difference in treatment between Class I and Class II insureds in the context of a UM waiver under 627.727 is well explained in *Cabrera*.

In *Cabrera*, the Plaintiff Cabrera was the owner of a trucking rig who chose to be insured through a policy issued to a trucking brokerage known as "TBBN" rather than secure coverage in his own name. *Cabrera*, 721 So.2d at 313-314. After he was injured in an accident in May of 1994, Cabrera sued for UM benefits contending that there had been no proper rejection of UM coverage by the named insured TBBN. *Id.*

The policy at issue had been issued in 1986 and according to the insurer the written rejection of UM coverage had been destroyed under its records retention

---

[8] See *Mullis v. State Farm Mut. Auto. Ins. Co.*, 252 So.2d 229, 237-238, explaining that Class I insureds are the named insured and resident family members and Class II insureds are those covered only while they are lawful occupants of one of an insured vehicle.

[9] The facts of *Cabrera* do not suggest there was an intentional non-compliance with the written waiver requirements.  Therefore, under *Jervis* it would be unnecessary to distinguish *Cabrera*.  However, out of an abundance of caution Plaintiff has chosen to address GEICO's erroneously claim that it has the right to establish an oral rejection in any situation.

policy. *Id.* As such, the insurer put forth testimony at trial that there had been both a written and oral rejection of UM coverage by the trucking brokerage. *Id.* In reversing a verdict in favor of Cabrera, the Third DCA noted:

> We also note that plaintiff elicited testimony, over objection, that Cabrera had not been given an opportunity to accept or reject UM coverage. Under the statute, the right to accept or reject UM coverage is that of "an insured named in the policy…." *Id.* § 627.727(1). **As Cabrera was not an insured named in the policy,[2] the insurer had no duty to obtain a waiver from Cabrera.** The objection should have been sustained….
>
> [2] Because Cabrera is covered by the policy, although not a named insured, he has standing to raise the question of whether there was a proper rejection of UM coverage. *See Travelers Ins. Co. v. Quirk,* 583 So.2d 1026, 1028 (Fla. 1991)**. Cabrera is a "class two" insured.** [Citations omitted.]

*Id.* at 314 (emphasis added).

The *Cabrera* court was clear that oral waiver was only at issue because the plaintiff Cabrera was not a named insured protected by the strict and mandatory language of section 627.727. The Third District reversed and remanded for a new trial because the trial court's instruction gave the impression that UM benefits – again, in that Class II case – could only be rejected in writing. *Id.*, at 314-315.

GEICO's Answer Brief in *Jervis* suggests in a footnote that *Anatkov* improperly attempts to overrule *Cabrera*, but in fact the cases do not conflict because of the disparate treatment of Class I and Class II insureds in this context.

The remaining cases routinely cited to by GEICO, *Belmont v. Allstate Ins. Co.*, 721 So.2d 436 (Fla. 5th DCA 1998) and *Muhammed v. Allstate Ins. Co.*, 582 So.2d 768 were both distinguished by the Fourth DCA in *Jervis*. *Jervis*, 2018 WL 1952980, at *3-*4.

### D.  This Court should expand its prior order finding GEICO's waiver form both non-complaint and unapproved by OIR by also finding it void.

Since GEICO's revised M-9 form was not approved by the OIR, it is null and void. See e.g., Fla. Stat. §627.410 (1) ("A basic insurance policy. . .or endorsement form … may not be delivered or issued for delivery in this state unless the form has been filed with the office…and has been approved by the office."); *American Mutual Fire Ins. Co. v. Illingworth*, 213 So.2d 747, 749-750 (Fla. 2nd DCA 1968) ("Because the endorsement form [purporting to exclude coverage] was not approved by the insurance commissioner then any endorsement written on the unapproved form must be rendered void. If the form is not approved, then the endorsement written on it in favor of the [insurer] must be in effect null and void.")

In *Jervis,* the trial court specifically voided the electronic version of the revised M-9 waiver form because the GEICO online process does not allow for an actual signature on the form, the form has a radio button pre-selected that cannot be changed or deselected, and the signing page did not have the warning language

required by statute. *Jervis* at *1 Because the same circumstances are present here, Plaintiff asks the Court to extend its prior Order and find that the GEICO waiver form utilized in this case is void.

### III: CONCLUSION

Because GEICO completely failed to comply with the written notice provisions of 627.727(1), Plaintiff respectfully requests that the Court grant her Motion for Partial Summary Judgment and find that the subject policy issued to Oscar Richard has 100/300 stacking UM coverage.

### Local Rule 7.1(F) Certification

This motion contains 3,193 words and undersigned calculated the word count at the time of filing using Microsoft Word's word count tool.

Respectfully Submitted,

**DELLECKER WILSON KING**
**McKENNA RUFFIER & SOS**
**A Limited Liability Partnership**

BY: s/ Kenneth J. McKenna
Kenneth J. McKenna

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of May, 2018 a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will automatically electronically serve a copy to: Frank A. Zacherl, Esq. (fzacherl@shutts.com); Brad Redlien, Esq. (bredlien@shutts.com) Shutts & Bowen, LLP.

**DELLECKER WILSON KING
McKENNA RUFFIER & SOS
A Limited Liability Partnership**

BY: s/ Kenneth J. McKenna
Kenneth J. McKenna
Florida Bar No. 0021024
Anthony F. Sos
Florida Bar No. 684791
719 Vassar Street
Orlando, Florida   32804
407-244-3000
Attorneys for Plaintiff
KJMeservice@dwklaw.com
AFSeservice@dwklaw.com