UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

NICOLE RICHARD,

     Plaintiff,

vs.                       Case No. 4:16cv00184-MW-CAS

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,
A foreign corporation,

     Defendant.

_____/

**Defendant's Response to Plaintiff's Renewed Motion for Partial Summary Judgment and Defendant's Cross-Motion for Partial Summary Judgment**

Defendant, Government Employees Insurance Company ("GEICO"), pursuant to Rule 56, Fed.R.Civ.P., Local Rule 56.1, and the Court's Order Requiring Supplemental Briefing on Summary Judgment (DE 145), files its Response to Plaintiff's Renewed Motion for Partial Summary Judgment ("Renewed MSJ"), and GEICO's Cross-Motion for Partial Summary Judgment. GEICO's Cross-Motion for Partial Summary Judgment concerns a narrow legal issue pertaining to the Florida Legislature's amendment to § 627.421(5), Fla. Stat., which occurred after the Court issued its Order Denying Defendant's Motion for Summary Judgment and Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment (DE 73).

## I. Introduction

This Court should decline Plaintiff's request to follow the Fourth District Court of Appeal's decision in *Jervis v. Castaneda*, No. 4D17-332, 2018 WL 1952980 (Fla. 4th DCA Apr. 25, 2018) because the decision misapprehends Florida law and it is an outlier opinion that conflicts with decisions from the First, Second, Third, and Fifth District Courts of Appeal, and federal courts interpreting Florida law.  Prior to the *Jervis* decision, no Florida court had held that failing to secure a valid, signed UM rejection form required an insurer to provide UM coverage and barred an insurer from establishing an oral, knowing rejection of UM coverage.  To the contrary, every Florida court that addressed the issue – spanning several decades of jurisprudence – has found that in cases where there was no valid UM rejection form, the insurer still had the right to a jury trial on whether the insured made a "knowing rejection" of UM coverage.  As explained below, the Court should resolve this newly-created conflict created by the *Jervis* opinion by holding that the Florida Supreme Court would resolve the conflict in favor of upholding decades-long Florida law permitting an insurer to prove that an insured made an oral, knowing rejection of UM coverage.

Additionally, GEICO cross-moves for summary judgment on the limited issue that GEICO's minor formatting changes to the "electronic" version of the M9 form did not require Florida Office of Insurance Regulation ("OIR") approval, as

argued by Plaintiff in her initial summary judgment motion, which Plaintiff incorporates by reference into her Renewed MSJ, and which formed part of the Court's summary judgment order (DE 73).

## II. Legal Argument

### A. The 1982 and 1984 amendments to § 627.727(1)

Before 1982, there was no statutory requirement that UM coverage be rejected in writing and the issue of whether an insured knowingly rejected UM coverage was usually a question of fact for jury determination. *See Quirk v. Anthony*, 563 So.2d 710, 713-14 (Fla. 2d DCA 1990), *approved and remanded sub nom. Travelers Ins. Co. v. Quirk*, 583 So.2d 1026 (Fla. 1991); *see also* § 627.727(1), Fla. Stat. (1975-1979). In 1982, § 627.727(1) was amended to require a written rejection. *Id*. at 714. In 1984, § 627.727 was further amended to require that the rejection be on a state approved form and, if the form was signed by the insured, it would be conclusively presumed that the insured made "an informed, knowing rejection of coverage…." *Id*.; *see also* § 627.727(1), (1984).

The *Jervis* decision overlooks the fact that the Florida Legislature's purpose for enacting the 1984 "conclusive presumption" amendment "was to ease the burden placed on insurance companies by the case law of Florida in proving that an insured knowingly rejected higher limits of UM coverage by requiring a 'paper

trail' as conclusively presumptive evidence of that fact." *Liberty Mut. Ins. Co. v. Ledford*, 691 So.2d 1164, 1166 (Fla. 2d DCA 1997).

Following the 1984 amendment to § 627.727(1), Florida state and federal courts have held for decades that an insurer may establish at trial that an insured made a knowing rejection of UM coverage in absence of a valid written rejection form. Prior to *Jervis*, no Florida appellate court or Florida federal court broke with this precedent, and the Florida Legislature never amended § 627.727 to prohibit a trial on knowing rejection in the absence of a valid written rejection form.

**B. The Court should decline to follow *Jervis* because it conflicts with all other Florida District Courts of Appeal and *Jervis* upends decades of established Florida law**

*Jervis* is in direct conflict with multiple decisions of other Florida District Courts of Appeal and Florida federal courts on the same point of law. These decisions, which are addressed below, establish that where an insurer does not have the benefit of the conclusive presumption that arises when an insured signs an OIR-approved form, the insurer may prove that the insured made a knowing rejection of UM coverage. Additionally, since the 1982/1984 amendments to § 627.727(1), all Florida courts that have addressed this issue (aside from *Jervis*) have consistently permitted insurers to prove that an insured knowingly rejected UM coverage through means other than a written form.

**(1) *Jervis* conflicts with all Third District Court of Appeal precedent**

In *Union American Ins. Co. v. Cabrera*, 721 So.2d 313 (Fla. 3d DCA 1998) the Third District held that, while "[t]he statute [627.727(1)] requires a written rejection … under the case law it is also permissible for an insurer to 'avoid the statutorily required [UM] coverage if it proves that the named insured orally waived the statutory requirement of a written rejection by knowingly selecting a lesser limit or by knowingly rejecting UM coverage.'" *Id*. at 314, citing *Chmieloski v. National Union Fire Ins. Co.*, 563 So.2d 164, 166 (Fla. 2d DCA 1990). Further, *Cabrera* specifically held that it was error for the trial court to read the jury a portion of § 627.727 because the instruction erroneously "told the jury that the rejection of UM coverage would be ineffective unless in writing." *Id*. On rehearing, *Cabrera* affirmed long-standing Florida law that an insurer may prove that the insured made an oral rejection of UM coverage. *Id*. at 317 ("The net effect was a confusing set of instructions which told the jury that an oral rejection would be permissible only if in compliance with section 627.727--the text of which required a written rejection, not an oral rejection.").

Judge Jorgenson's dissent in *Cabrera* argued that the trial court's jury instructions were proper because they "simply tracked, word for word, section 627.727, Florida Statutes, which requires a written rejection of UM coverage." *Id*.

at 315.  The *Cabrera* majority rejected this argument twice – in its initial decision and in its opinion on the plaintiff's motion for rehearing.

Prior to the *Cabrera* decision, the Third District had long held that an insurer may prove that an insured made a knowing rejection of UM coverage in the absence of a valid UM rejection form.  *See Muhammed v. Allstate Ins. Co.*, 582 So.2d 768, 769 (Fla. 3d DCA 1991) ("We agree with the decisions in *Adams v. Aetna Casualty & Sur. Co.*, 574 So.2d 1142 (Fla. 1st DCA 1991); *Chmieloski v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 563 So.2d 164 (Fla. 2d DCA 1990); and *Quirk v. Anthony*, 563 So.2d 710 (Fla. 2d DCA 1990), that the mere fact that the form actually utilized arguendo departs from the one statutorily provided by section 627.727, Florida Statutes (Supp.1984) does not preclude a carrier from otherwise demonstrating a knowing rejection of uninsured motorist coverage."); *Bethel v. Reliance Ins. Co.*, 590 So.2d 1003, 1003 (Fla. 3d DCA 1991) (affirming summary judgment for insurer and holding that an insurer may show a knowing rejection of UM coverage through testimony in the absence of a written rejection form).

*Jervis* "decline[d] to follow" *Muhammed v. Allstate Ins. Co.*, stating that the decision provides insufficient detail to determine if the "noncompliant" notice at issue in *Muhammed* is analogous to the notice at issue in *Jervis*.  However, this attempt to distinguish *Muhammed* fails because *Jervis* does not explain what

difference could possibly exist between a "noncompliant" notice and a "void" notice.  Moreover, *Jervis* fails to even mention the Third District's later decisions in *Cabrera* and *Bethel*, discussed above.

### (2) *Jervis* conflicts with all Second District Court of Appeal precedent

Similarly, the Second District has consistently held – for decades – that an insurer can rely on evidence other than a statutorily compliant form to establish a knowing rejection of UM coverage.  *Jervis* cites *Quirk*, 563 So.2d 710 (Fla. 2d DCA 1990) for the position that the Legislature has expressed a public policy to promote UM coverage, but *Jervis* overlooks that *Quirk* (a post-1984 UM rejection case) featured analogous facts to *Jervis* insofar as the insurer indisputably had no written rejection of UM coverage.  *Id*. at 715 (holding that absent a written rejection of UM coverage, an insurer may "prove that the named insured waived the right to a written rejection by otherwise making a knowing rejection.").  On review by the Florida Supreme Court, this aspect of the decision was not disturbed (or even addressed); the Florida Supreme Court confirmed that Class II insureds have standing to challenge the lack of a written rejection and addressed an unrelated question involving whether an agent can reject coverage on behalf of an insured.  *Travelers Ins. Co. v. Quirk*, 583 So.2d 1026 (Fla. 1991).

Moreover, in applying the post-1984 version of § 627.727, the Second District has consistently held that, absent a statutorily compliant form, an insurer

7

may rely on other evidence to establish a knowing rejection of UM coverage. *See Ledford*, 691 So.2d at 1166, FN 3 ("Even if an insurance company fails to secure the statutorily required written rejection/selection form, thus depriving it of this presumption … the company still has the right to prove that the named insured orally waived the statutory requirement of a written rejection by knowingly selecting a lesser limit or by knowingly rejecting UM coverage"); *Chmieloski*, 563 So.2d at 166 (an insurer "can avoid the statutorily required coverage if it proves that the named insured orally waived the statutory requirement of a written rejection by knowingly selecting a lesser limit or by knowingly rejecting UM coverage").

The Second District's decision in *Teachers Ins. Co. v. Bollman*, 617 So.2d 817, 818 (Fla. 2d DCA 1993) reflects the illogical result that would occur if the *Jervis* decision were followed.  In *Bollman*, which addressed the 1991 version of § 627.727, the plaintiff admitted at deposition that she had discussed the option of stacking or not stacking coverage with her insurance agent. *Id*. at 818.  While the plaintiff initially had stacked UM coverage, "when the rates increased and when it became necessary for them to insure two teenage drivers, they determined to change to non-stacked coverage to reduce costs." *Id*.  The plaintiff then "directed a memorandum to her agent containing the following language: 'Please change the following policies from stacked coverage to unstacked as discussed last week on

8

the telephone.'" *Id.*  The *Bollman* court held that "[t]he fact that Mrs. Bollman's written rejection was not on a statutorily prescribed form does not undermine its effect, *i.e.*, "demonstrating a knowing rejection of uninsured motorist coverage." (citing *Muhammed*, 582 So.2d at 769).  However, applying the *Jervis* holding would lead to the unreasonable result that an insured that both orally and in writing rejected UM coverage would be provided free UM coverage in the absence of a statutorily prescribed UM rejection form.

### (3) *Jervis* conflicts with all Fifth District Court of Appeal precedent

The Fifth District held that, in the absence of a valid UM election/rejection form, the insurer "may still be able to show a knowing acceptance of limited [UM] coverage by the [plaintiffs]."  *Belmont v. Allstate Ins. Co.*, 721 So.2d 436, 438 (5th DCA 1998).  In *Belmont*, the Fifth District reversed a summary judgment whereby the trial court concluded the plaintiff's original selection of non-stacked coverage applied to a policy that was later modified without a "new rejection of uninsured motorist coverage and/or a rejection of stacked uninsured motorist coverage."  *Id.* at 437-38.  The *Belmont* court remanded for trial on the issue of whether the plaintiffs were entitled to stacked coverage, noting that although the insurer would not "have the benefit of the earlier signed election of non-stacking as proof of acceptance" of non-stacked coverage, the insurer "may still be able to show a knowing acceptance of limited coverage by the [plaintiffs]."  *Id.* at 438.

*Jervis* incorrectly states that *Belmont* is not "controlling" because it (1) "involved an initial notice that complied with section 627.727; in this case there was no notice"; and (2) "based its decision on the contract language in Allstate's form", so the decision did not "turn[] on the absence of a statutory notice before the initial purchase of a policy." *Jervis*, 2018 WL 1952980 at *4. These distinctions are flawed for two reasons. First, although *Belmont* acknowledges that the initial written form complied with the statute, *Belmont* nonetheless holds that the insurer could not rely on the form to establish that the insureds knowingly accepted non-stacked coverage. Second, although *Belmont* references the language in the insurer's form, the holding is not "based on the form"—the holding was that the insurer, like GEICO, could not rely on the form to establish the insured's knowing acceptance of the limitations of non-stacked coverage, but could show a knowing acceptance through other means. In both *Belmont* and *Jervis*, the ultimate question was whether the insurer could prove, through means other than a written form, that the insured knowingly accepted non-stacked coverage. However, these decisions are in direct conflict because *Belmont* (and every other Florida appellate decision addressing this issue) holds that an insurer can do so, and *Jervis* holds that an insurer cannot.

### (4) *Jervis* **conflicts with all First District Court of Appeal precedent**

Lastly, *Jervis* conflicts with the First District's decision in *Adams v. Aetna Cas. & Sur. Co.*, 574 So.2d 1142 (1st DCA 1991).   In *Adams*, the court reversed a directed verdict for Aetna in a UM rejection/waiver case that arose under the 1982 version of the statute (in which a written rejection was required, but there was no requirement of OIR approval and no provision for a conclusive presumption). Even though Aetna adduced "no evidence" to prove it had obtained or even tried to obtain a signed rejection form, it was nonetheless entitled to prove on remand that the insured had "otherwise waived these rights under the statute." *Id.* at 1148. Additionally, *Adams* cited *Quirk*, 563 So.2d 710 for the holding that, even in the absence of a written rejection form, an insurer is permitted to prove that its insured "waived the right to a written rejection by otherwise making a knowing rejection of the coverage required by statute." *Id.* at 1147.

## C. The Court should decline to follow *Jervis* because it conflicts with Florida federal court precedent

Recent federal decisions interpreting Florida law also conflict with *Jervis*. *Arnold v. Wausau Underwriters Ins. Co.*, 13-60299-CIV, 2014 WL 710104  (S.D. Fla. Feb. 25, 2014) held that the insurer may establish at trial that a knowing rejection of UM coverage occurred despite the fact that the UM rejection form was neither signed nor dated.  *Id*. at *6.

Additionally, *Popson v. 21st Century Centennial Ins. Co.*, 8:14-CV-1788-MSS-MAP, 2015 WL 12838360 (M.D. Fla. Dec. 7, 2015) recently held that "[a]bsent a written rejection by the Popsons or the statutory presumption, Defendant has the burden of establishing that the Popsons made an informed, knowing rejection of coverage." *Id.* at *7, citing *Quirk*, 563 So.2d at 714.

GEICO could not locate a single Florida federal district court case supporting the Fourth District's holding in *Jervis*.

**D. The Florida Supreme Court would side with the long-established precedent that an insurer may prove at trial that an insured made an oral, knowing rejection of UM coverage in the absence of a valid written UM rejection form**

Following the *Jervis* decision, there is now a conflict among the Florida district courts of appeal on the issue of whether an insurer may establish at trial that an insured made a knowing rejection of UM coverage in the absence of a written rejection form. The Florida Supreme Court has not addressed this conflict.

**(1) Legal standard: the Court must "divine" how the Florida Supreme Court would resolve a conflict among the district courts of appeal**

Plaintiff's Renewed MSJ fails to acknowledge the clear conflict between *Jervis* and the decisions from the First, Second, Third, and Fifth District Courts of Appeal. Further, Plaintiff fails to provide the Court with the established legal framework for a federal court sitting in diversity to resolve such a conflict – or how the Florida Supreme Court would resolve it. "A federal court applies the substantive law of the forum state in a diversity case, unless federal constitutional

or statutory law requires a contrary result." *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 774 (11th Cir. 2000). "Where the state's highest court has not spoken to an issue, a federal court 'must adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'" *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001), citing *Ins. Co. of N. Am. v. Lexow,* 937 F.2d 569, 571 (11th Cir.1991)

"Where, however, there is a conflict within the district courts of appeal, [a federal district court] must attempt to divine how the Supreme Court of Florida would resolve that conflict." *Doe No. 60 v. G-Star Sch. of Arts, Inc.*, 16-CV-80446, 2017 WL 2212429, at *3 (S.D. Fla. May 19, 2017); *see also Graddy v. Wal-Mart Stores E., LP*, 237 F. Supp. 3d 1223, 1226–27 (M.D. Fla. 2017) ("The Supreme Court of Florida has not addressed this apparent conflict between Florida's district courts of appeal. Thus, this Court must attempt to apply the law as the Supreme Court of Florida would.") (footnote omitted).

Therefore, this Court must "divine" how the Florida Supreme Court would resolve this conflict.  As addressed above, the overwhelming weight of Florida state and federal jurisprudence is in conflict with *Jervis*, which the *Jervis* opinion failed to distinguish.   As those cases reflect, numerous Florida district courts of appeal have, after analyzing the language of the post-1984 version of § 627.727(1),

nevertheless consistently held that an insurer may prove an oral, knowing rejection of UM coverage in the absence of a UM rejection form.  As explained below, *Jervis's* analysis and Plaintiff's arguments and citations in support of the *Jervis* holding are against the weight of Florida law and do not reflect how the Florida Supreme Court would decide this issue.

Plaintiff argues that *Mercury Insurance Co. v. Anatkov*, 929 So.2d 624 (Fla. 3d DCA 2006) supports her argument that she is entitled to UM coverage as a matter of law in the absence of a valid written UM rejection form.  However, Plaintiff's reliance on *Anatkov* is misplaced.  The *Anatkov* court was not presented with—and did not decide—the question of whether an insurer may prove that an insured knowingly rejected UM coverage, limited or otherwise, by means other than in writing.  In *Anatkov*, the insurer (Mercury) initially denied UM benefits on the ground that its insured rejected UM coverage by signing a written form pursuant to subsection (1).  *Id.* at 626.  Mercury later discovered the signature on the form was forged, yet still denied UM benefits.  *Id.*  Mercury appealed summary judgment for the insured, arguing *inter alia* that the insured was not entitled to UM benefits because he failed to notify Mercury before settling with the underinsured motorist's insurer.  *Id.*  **Mercury did not argue on appeal that its insured rejected UM coverage.**  In light of the forged rejection form, the Third District explained that the insured was entitled to UM benefits and held that Mercury

14

breached the policy by denying coverage and that such breach "relieved [the insured] of any obligation to notify Mercury of the settlement…." *Id.* at 627-28.[1]

Next, Plaintiff's reliance on *Tobin v. Michigan Mut. Ins. Co.*, 948 So.2d 692 (Fla. 2006) does not support her argument that an insurer is barred from establishing an oral rejection of UM coverage absent a written UM rejection form. In *Tobin*, the Florida Supreme Court addressed a narrow question from the Eleventh Circuit regarding the reformation of an insurance policy issued by Michigan Mutual Insurance Company to Ford Motor Company, and whether "the plaintiffs are entitled to uninsured/underinsured motorist coverage under the policy as reformed." *Id.* at 693-94. *Tobin* primarily addressed the federal district court's reformation of the "named insured" provision of the insurance policy and the opinion only provides a boilerplate recitation of an insurer's requirement to generally comply with §627.727. Again, *Tobin* never addressed the issue raised

---

[1] Even if *Anatkov* could be read as Plaintiff suggests (and it cannot), it should not be considered persuasive because it is not the prevailing precedent in the Third District. *Anatkov* was decided by a three-judge panel of the Third District **after** that court's decisions in *Cabrera* and *Muhammed*, both of which determined that insurers may offer evidence of a knowing, oral waiver of full UM coverage in the absence of a valid written rejection. It is well-established that "a three-judge panel of a district court should not overrule or recede from a prior panel's ruling on an identical point of the law." *Taylor Eng'g, Inc. v. Dickerson Fla., Inc.*, 221 So. 3d 719, 723 n.3 (Fla. 1st DCA 2017) (quoting *In re Rule 9.331*, 416 So. 2d 1127, 1128 (Fla. 1982)). Thus, the *Anatkov* panel would not have been authorized to overrule *Cabrera* and *Muhammed* without an en banc proceeding. *Id.*

here – whether GEICO may establish at trial that Oscar Richard made a knowing rejection of UM coverage.

The *Jervis* opinion's reliance on *Gov't Employees Ins. Co. v. Douglas*, 627 So.2d 102 (Fla. 4th DCA 1993), *approved,* 654 So.2d 118 (Fla. 1995) does not support the *Jervis* holding that an insurer may not establish an oral, knowing rejection in the absence of a written UM rejection form.  As a threshold point, *Douglas* did not concern an insured's rejection of UM coverage under § 627.727(1), but instead dealt with an exclusion for owned, but uninsured, vehicles as authorized by § 627.727(9)(d).  Specifically, the plaintiff, Douglas, owned two vehicles insured by GEICO for UM coverage; he also owned a truck that was insured by another carrier for PIP coverage only.  *Id.* at 102.  Douglas was involved in an accident in the truck and sought UM benefits from GEICO; GEICO denied the claim, asserting that its UM policy contained an exclusion for owned, but uninsured, vehicles.  *Id.* at 102-103 (discussing section 627.727(9)(d), which authorizes insurers to limit UM coverage to those vehicles the insured owns and for which UM coverage is purchased).  Critically, GEICO undisputedly did not inform Douglas of the policy limitation and did not contend that Douglas had made a "knowing acceptance" of it.  *Id.* at 103.  GEICO's only defense in *Douglas* was that "the notice requirement [wa]s inapplicable because the insured acquired coverage for the truck with a different insurance carrier." *Id.*  The Fourth District

concluded that Douglas was entitled to UM benefits for his accident in the truck. *Id.*

The Fourth District's decision in *Douglas* does not mention, let alone pass on, the question of whether an insured can orally make "an informed, knowing acceptance of" limitations on UM coverage under § 627.727(1). The Florida Supreme Court's decision approving *Douglas* is also inapplicable as it simply confirms the Fourth District's holding that to validly limit UM coverage, the insurer must provide notice of the limitation and obtain a "knowing acceptance of the limited coverage." *Gov't Employees Ins. Co. v. Douglas*, 654 So. 2d 118, 120-21 (Fla. 1995). The Florida Supreme Court was not faced with and did not pass on the question of whether such an acceptance must be written or include a written rejection.

### (2) Plaintiff attempts to create a false distinction between Class I and Class II insureds, but Florida courts do not distinguish between Class I and Class II insureds for purposes of an oral rejection of UM coverage

Plaintiff concedes that Florida courts recognize a knowing, oral rejection of UM coverage, but she attempts to avoid this precedent by artificially limiting this case law to Class II insureds only. *See* Renewed MSJ (DE 150), pp. 11 – 14.[2] In

---

[2] The Class I and Class II distinction was explained by the Florida Supreme Court as follows:

> Typically, automobile insurance policies recognize two classes of insureds, Class I insureds and Class II insureds. "[C]lass I insureds are named insureds and resident relatives of named insureds." *Travelers*

other words, Plaintiff argues that § 627.727(1) must be construed to limit an oral rejection of UM coverage in the Class I context, but that an oral rejection of UM coverage is permitted in the Class II context – despite the fact that the litigation in either the Class I or Class II context would focus on the Class I insured's purported oral rejection of UM coverage.  This argument is meritless.

First, *Belmont*, 721 So.2d at 438 held that an insurer may establish that an insured made an oral, knowing rejection of UM coverage in the absence of a written rejection form.  Moreover, the *Belmont* plaintiffs were Class I insureds.  As *Belmont* explains, Mr. and Mrs. Belmont purchased the policy at issue.  *Id*. at 436. After the Belmonts' daughter, who was not a party to the appeal, was injured in an accident with an uninsured motorist, Mr. and Mrs. Belmont sought a declaration that the policy included stacked UM coverage.  *Id*.

Plaintiff also mischaracterizes the Third District's decision in *Cabrera*, arguing that "[t]he *Cabrera* court was clear that oral waiver was only at issue because the plaintiff Cabrera was not a named insured protected by the strict and

---

*Ins. Co. v. Warren,* 678 So.2d 324, 326 n. 2 (Fla.1996). Class II insureds are all other lawful occupants of an insured vehicle who are not the named insureds or a resident relative of the named insured; essentially, they are "third party beneficiaries to the named insureds' policy." *Id.*

*Travelers Commercial Ins. Co. v. Harrington*, 154 So.3d 1106, FN 3 (Fla. 2014).

mandatory language of section 627.727." *See* Renewed MSJ, p. 13.  But nothing in *Cabrera* suggests that the plaintiff's status as a Class II insured had any bearing on whether the insurer could assert that the named insured (Cabrera's employer) made a knowing, oral rejection of UM coverage.  Instead, *Cabrera* confirms that: (1) Class I insureds may knowingly, orally reject UM coverage, (2) the right to accept or reject UM coverage belongs solely to the Class I insured so evidence of whether the Class II insured rejected UM coverage is irrelevant and inadmissible, and (3) Class II insureds have standing to challenge whether a Class I named insured validly rejected UM coverage. *Cabrera*, 721 So.2d at 314-315 & nn.1-3.

Subsections (1) and (9) of § 627.727 both specify that a rejection of UM coverage or selection of limited UM coverage must be made by a "named insured"; case law confirms that only named insureds (*i.e.*, Class I insureds) can decide whether to reject UM coverage altogether and—assuming coverage is not rejected—whether to accept the limitations of non-stacked UM coverage. *Cabrera*, 721 So.2d at 315 n.3; *Belmont*, 721 So.2d at 437.  Not a single case cited by the Plaintiff even hints at the notion that a defense based on oral rejection of UM coverage or oral acceptance of non-stacked coverage can be asserted only against a Class II insured.  Rather, Plaintiff's authorities establish that Class I insureds may knowingly, orally reject UM coverage and Class II insureds have standing to challenge the validity of such a rejection.  *See Quirk*, 563 So.2d at 715

19

("Although we hold that a class II insured has standing to raise the issue of a written rejection, this does not mean that the class II insured automatically receives UM coverage in the absence of a written rejection by the named insured."); *Ledford*, 691 So.2d at 1166 n.3 (same); *Chmieloski*, 563 So.2d at 166 (same); *Adams*, 574 So.2d at 1147 (in claim brought by Class II insured, holding that—in the absence of a document signed by the named insured—whether the insured rejected UM coverage or selected lower limits is ordinarily a jury question).

Indeed, no Florida court has ever decided whether an insurer can assert a defense of oral rejection of UM coverage based on whether the claimant is a Class I or Class II insured – and with good reason.  If the Court accepted Plaintiff's Class I/Class II oral rejection distinction, different insureds could have different UM coverages under the same policy.  For example, under Plaintiff's theory, the same policy could provide a Class I insured with stacked UM coverage because the insurer lacks a valid UM rejection form, but a Class II insured would not be entitled to UM coverage because the insurer can show an oral rejection of UM coverage by the Class I insured.

The Florida Supreme Court has expressly disapproved an analogous outcome.  *See Travelers Comm'l Ins. Co. v. Harrington*, 154 So. 3d 1106, 1114 (Fla. 2014) (holding that the named insured's selection of non-stacked coverage

20

bound all insureds under the UM policy; rejecting premise that some insureds

could have stacked coverage while others could not).

**E. Plaintiff fails to put forward any evidence establishing that GEICO allegedly willfully disregarded the requirements of § 627.727**

Without any supporting evidence or facts Plaintiff argues that GEICO was in

"willful disregard of the 627.727 requirements" and that "GEICO brought this

problem upon itself by willfully ignoring 627.727 to sell policies that appear to

have lower premiums when in fact they just have less coverage."  *See* Renewed

MSJ, p. 11.  Putting aside the issue that a finding of willfulness is wholly irrelevant

to the issues before this Court, there is no evidence in the record that GEICO's

alleged noncompliance with § 627.727 was "willful."  In short, Plaintiff is

attempting to impermissibly obtain a finding of bad faith in a coverage trial.

Contrary to the facts as stated in *Jervis*, GEICO here did not "completely

fail[] to comply with the written notice provisions of section 627.727(1) & (9)"

because it provided Oscar Richard with, and he signed, the "electronic" M9 form

advising him of his UM coverage rejection.  While the Court held that GEICO's

"electronic" M9 form suffered from technical defects that prevented it from

obtaining § 627.727's conclusive presumption, this is far from a finding that

GEICO "completely fail[ed] to comply with" § 627.727.  Additionally, the facts of

*Jervis* and the instant case differ, such as in how the M9 forms were displayed in

each case, which makes any alleged "willfulness" finding by the *Jervis* court (of which there was none) inapplicable in this case.

Additionally, Plaintiff attempts to create a "willfulness" argument by rehashing the same argument that the Court previously rejected – that Plaintiff is purportedly entitled to summary judgment on the grounds that GEICO issued the policy without first obtaining a written UM rejection. *See* Order (DE 73), pp. 1 – 2.

While Plaintiff fails to provide the Court with a definition of "willful," "willfully," as used in the Internal Revenue statutes, "generally connotes a voluntary, intentional violation of a known legal duty." *United States v. Houser*, 754 F.3d 1335, 1350 (11th Cir. 2014), quoting *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976) (per curiam). Similarly, "willfully" is defined in the Eleventh Circuit's pattern criminal jury instructions as requiring a person or entity to commit an act voluntary and purposely, with the intent to do something that the law forbids. *See*, *e.g.*, B9.1A, B9.1B.

While GEICO disputes that it did not comply with § 627.727, even if the Court were to accept Plaintiff's allegations as true, there is a complete lack of evidence that GEICO "willfully" failed to comply with § 627.727's requirements. Moreover, it is absurd to claim, as Plaintiff does, that GEICO would go to the effort of requiring Oscar Richard to sign an allegedly noncompliant UM rejection

22

form while, at the same time, GEICO "knew" that it was "willfully" failing to comply with § 627.727.

### III. GEICO's Cross-Motion for Partial Summary Judgment

Plaintiff's Renewed Motion for Partial Summary Judgment (DE 150) expressly "adopts and incorporates by reference her Motion for Partial Summary Judgment (DE 47), Reply to GEICO's Response to Motion for Partial Summary Judgment (DE 56), and her Response in Opposition to GEICO's Motion for Final Summary Judgment (DE 55)."  Plaintiff's Motion for Partial Summary Judgment (DE 47) sought partial summary judgment, in part, on the grounds that GEICO's electronic M9 form (the UM rejection/selection form) was not approved by the OIR.  DE 47, p. 3, 6.  Plaintiff argued that the "paper" version of the M9 form that was approved by the OIR was not the same as the "electronic" version of the M9 form that is at issue here.  *Id.*  The differences between the "paper" and "electronic" M9 forms are minor formatting changes, such as displaying paragraphs 2 through 4 on the second page of the "electronic" M9 form.  *See* DE 45-7, pp. 49-50 and DE 43-13 (Richard M-9 form).  There are no substantive differences between the two forms.

In its Order (DE 73), the Court held that the "electronic" M9 form was not approved by the OIR for two reasons.  Order, p. 2.  First, the Court held: "Defendant amended its form without having OIR review that form or obtaining

OIR's approval.  That the changes were minor and only affected structure is of no matter; all waiver forms "*shall* … [be] on a form approved by the office" to enjoy the conclusive presumption."  Second, the Court held that GEICO is not entitled to the conclusive presumption because the M9 form does not track the specific language of § 627.727.  *Id.* at p. 3.

This Cross-Motion only addresses the Court's first finding, as to the formatting, in light of the Florida Legislature's amendment to § 627.421, Fla. Stat., which has retroactive application.[3]  Section 627.421 governs the delivery of an insurance policy to an insured and it was amended, effective June 23, 2017, to include the following provision:

> (5) An electronically delivered document satisfies any font, size, color, spacing, or other formatting requirement for printed documents if the format in the electronically delivered document has reasonably similar proportions or emphasis of the characters relative to the rest of the electronic document or is otherwise displayed in a reasonably conspicuous manner.

§ 627.421(5), Fla. Stat.

---

[3] GEICO incorporates by reference the Statement of Facts from its Motion for Final Summary Judgment (DE 44), its Notice of Filing Exhibits in Support of Motion for Final Summary Judgment (DE 43), and its Notice of Filing Amendment to Affidavit of Christopher Smith (DE 48).  Given the narrow legal issue addressed by GEICO with respect to amended § 627.421 and the Court's summary judgment order (DE 73) addressing the prior briefing, GEICO did not file a separate Statement of Facts section here, which would merely repeat GEICO's prior Statement of Facts in DE 44.  However, GEICO will file a Statement of Facts if requested by the Court.

The effect of this amendment is to provide "a means for electronic insurance documents to be measured in comparison to paper based documents standards." *See Florida House of Representatives Final Bill Analysis* (June 27, 2017), DE 152-1 at pp. 12, 19-20.  The Legislature believed that "[i]nsurers and consumers will be positively impacted by increased opportunities for electronic delivery of documents."  *Id.* at 20.

It is undisputed that the "paper" version of the M9 form was approved by the OIR and that no substantive changes (*i.e.*, no changes in the form's language) were made when the "electronic" form was refitted for electronic purposes.  *See* DE 45-7, pp. 49-50 and DE 43-13 (Richard M-9 form).

Section 627.421(5) should be applied retroactively here because it is a procedural statute and, therefore, has retroactive application under Florida law. Generally, a statute is presumed not to have retroactive application, but the presumption is rebuttable by clear evidence that the legislature intended that the statute be applied retroactively. *See Essex Ins. Co. v. Integrated Drainage Sols., Inc.,* 124 So.3d 947, 951 (Fla. 2d DCA 2013) (citing *Fla. Ins. Guar. Ass'n v. Devon Neighborhood Ass'n,* 67 So.3d 187, 195 (Fla. 2011)).  Under the Florida Supreme Court's two-prong test for retroactivity: "First, the Court must ascertain whether the Legislature intended for the statute to apply retroactively.  Second, if such an intent is clearly expressed, the Court must determine whether retroactive

application would violate any constitutional principles." *Id. (citing Menendez v. Progressive Express Ins. Co.,* 35 So.3d 873, 877 (Fla. 2010)).

However, two exceptions exist to the general rule against retroactive application. The first exception relates to procedural statutes, which unlike substantive statutes, may be applied retroactively, because no one has a vested interest in any given mode of procedure. *See State v. Kelley,* 588 So. 2d 595, 597 (Fla. 1st DCA 1991) (citing *Walker & LaBerge, Inc. v. Halligan,* 344 So. 2d 239, 243 (Fla. 1977)). The second exception relates to remedial statutes. Because remedial statutes "do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, [they] do not come within the legal conception of a retrospective law, or the general rule against retrospective operation of statutes." *City of Lakeland v. Catinella,* 129 So.2d 133, 136 (Fla. 1961).

Thus, under Florida law, "[t]he general rule is that a substantive statute will not operate retrospectively absent clear legislative intent to the contrary, but that a procedural or remedial statute is to operate retrospectively." *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So.2d 55, 61 (Fla. 1995) (citing *Arrow Air, Inc. v. Walsh,* 645 So. 2d 422 (Fla. 1994); *Alamo Rent–A–Car, Inc. v. Mancusi,* 632 So.2d 1352 (Fla. 1994); *Catinella,* 129 So.2d 133). "Statutes that relate only to procedure or remedy generally apply to all pending cases," but a substantive law that interferes

26

with vested rights will not be applied retrospectively. *See Gupton v. Village Key &*
*Saw Shop, Inc.,* 656 So.2d 475, 477 (Fla. 1995).

Substantive statutes either create or impose a new obligation or duty, or
impair or destroy existing rights. *See Mancusi,* 632 So.2d at 1358. Procedural
statutes, on the other hand, "concern[ ] the means and methods to apply and
enforce those duties and rights," and "no one has a vested interest in any given
mode of procedure." *Life Care Centers of Am., Inc. v. Sawgrass Care Ctr., Inc.*,
683 So.2d 609, 613 (Fla. 1st DCA 1996).

Accordingly, § 627.421(5) merely addresses formatting issues when paper
documents are converted to electronic documents (*i.e.*, § 627.421(5) concerns the
means and methods to apply and enforce "certain standards applicable to paper
documents"). However, subsection (5) does not impair vested rights, create new
obligations, or impose new penalties and thus should be construed retroactively as
a procedural, not substantive, statute.

## IV. Conclusion

For the foregoing reasons, GEICO respectfully requests that the Court: (1)
deny Plaintiff's Renewed Motion for Partial Summary Judgment, and (2) grant
GEICO's Cross-Motion for Partial Summary Judgment

## Local Rule 7.1(F) Certification

This motion contains 6,657 words and undersigned calculated the word count at the time of filing using Microsoft Word's word count tool.

Respectfully submitted,

**SHUTTS & BOWEN LLP**
*Counsel for Government Employees*
*Insurance Company*
200 S. Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Tel:  (305) 358-6300

By: s/Brad Redlien
   Frank A. Zacherl
   fzacherl@shutts.com
   Florida Bar No. 0868094
   Brad Redlien
   Florida Bar No. 0778761
   bredlien@shutts.com

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF on the 14th day of May, 2018 on all counsel or parties of record on the Service List below.

By: s/Brad Redlien
   Of Counsel

## SERVICE LIST

Kenneth J. McKenna, Esq.
Dellecker Wilson King McKenna
Ruffier & Sos, LLP
719 Vassar Street
Orlando, FL 32804
kmckenna@dwklaw.com
wdmeservice@dwklaw.com
Counsel for Plaintiff

MIADOCS 16387316 5