UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

NICOLE RICHARD,

    Plaintiff,

vs.                               Case No. 4:16cv00184-MW-CAS

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,
A foreign corporation,

    Defendant.
_____/

**Defendant's Surreply to Plaintiff's Renewed Motion for Partial Summary Judgment (DE 180), and GEICO's Reply in Support of its <u>Cross-Motion for Partial Summary Judgment (DE 153)</u>**

Defendant, Government Employees Insurance Company ("GEICO"), pursuant to the Court's June 13, 2018 Order, files its (a) Surreply to Plaintiff's Reply in Support of Plaintiff's Renewed Motion for Partial Summary Judgment (DE 180), and (b) Reply to Plaintiff's Response to Defendant's Cross-Motion for Partial Summary Judgment (DE 180).

**I. GEICO's Surreply to Plaintiff's Reply (DE 180)**

**A. The *Jervis* decision conflicts with all other Florida precedent**

GEICO's Response to Plaintiff's Renewed Motion for Partial Summary Judgment and Defendant's Cross-Motion for Partial Summary Judgment (DE 153,

1

the "Response") details how *Jervis v. Castaneda*, 243 So. 3d 996 (Fla. 4th DCA 2018) is in direct conflict with multiple decisions of other Florida District Courts of Appeal and Florida federal courts on the same point of law. *See* Response (DE 153), pp. 4-7. These decisions reflect long-standing Florida law that where an insurer does not have the benefit of the conclusive presumption that arises when an insured signs an OIR-approved form, the insurer may still prove that the insured made a knowing rejection of UM coverage at trial. *Id*. Prior to *Jervis*, no Florida state or federal court prohibited an insurer from establishing at trial that an insured made a knowing rejection of UM coverage in the absence of a signed UM rejection form.

Plaintiff's attempt to distinguish *Teachers Ins. Co. v. Bollman*, 617 So.2d 817 (Fla. 2d DCA 1993) fails because it is irrelevant whether the "rejection of UM coverage [occurred] at the time of the initial purchase." Plaintiff's Reply in Support of Plaintiff's Renewed Motion for Partial Summary Judgment and Response to Defendant's Cross-Motion for Partial Summary Judgment (the "Reply") (DE 180), p. 8. Under Plaintiff's mistaken interpretation of §627.727, the *Bollman* court should have barred the insurer from establishing that the insured made a knowing rejection of stacked UM coverage because the insured did not sign a statutorily prescribed UM rejection form. *See Teachers Ins. Co.*, 617 So.2d at 818. However, Plaintiff's Reply argues for a Plaintiff-invented exception in

2

which §627.727 must be strictly followed for an initial policy purchase, but ignored for "an existing policy" change.

Next, Plaintiff misrepresents the holding in *Muhammed v. Allstate Ins. Co.*, 582 So.2d 768 (Fla. 3d DCA 1991) in an attempt to distinguish it from *Jervis*. *See* Reply (DE 180), p. 9. Plaintiff argues that *Muhammed* is "factually distinguishable from *Jervis*, because *Jervis* rests on GEICO's general business practice of not providing written notice to the insured before selling the policy." *Id*. First, no charitable reading of *Jervis* supports Plaintiff's fabrication that *Jervis* "rests on GEICO's general business practice of not providing written notice to the insured before selling the policy." *Id*. Neither GEICO's alleged "general business practice" nor the timing of when the UM rejection form was provided to the insured is addressed in the *Jervis* opinion. Second, the *Muhammed* decision does not address the timing of when an insurer must provide the insured with the UM rejection form, as Plaintiff claims. Third, no court has found that GEICO's **general business practice** is not to provide written notice to an insured before selling a policy.

Plaintiff's Renewed Motion for Partial Summary Judgment (DE 150, the "Renewed MSJ") and Reply (DE 180) make contradictory claims as to what *Jervis* holds in an attempt to convince the Court that *Jervis* does not conflict with all prior Florida case law. In short, Plaintiff seeks to avoid broad application of *Jervis* (to

avoid a DCA conflict scenario) in an attempt to somehow limit the *Jervis* holding solely to GEICO.[1]  Initially, Plaintiff described *Jervis*'s holding as having broad application:

> The Fourth District's recent opinion in *Jervis* … establishes that Florida law does not allow an insurance company that fails to comply with the written notice requirements of section 627.727(1) &(9) … to establish that an insured orally rejected UM coverage.
>
> …
>
> The *Jervis* Court expressly and completely rejected GEICO's argument, instead holding "that the failure to serve the mandatory notice precludes the insurance company from claiming that the insured orally made a knowing choice regarding the stacking of UM coverage.[6]"

Renewed MSJ (DE 150), pp. 2, 6-7.

However, Plaintiff now attempts to narrow *Jervis*'s holding in the Reply (DE 180) to, on the one hand, avoid a conflict with long-standing Florida precedent, but, on the other hand, apply *Jervis* exclusively to GEICO lawsuits:

> ... *Jervis* is readily distinguishable from all prior precedent because no other reported case involves an automobile insurance carrier with a general business

---

[1] For example, Plaintiff argues that there is no conflict because no cases prior to *Jervis* "have specifically addressed a Class I insured coupled with an insurance carrier's complete failure (via general business practice) to present a written waiver form prior to purchase of the policy." *See* Reply (DE 180), p. 10.  While GEICO disputes Plaintiff's description of the *Jervis* holding, it is absurd to argue that case law lacks precedential value unless all of the (alleged) case facts perfectly align.

> practice that "completely fails to comply with the written notice provisions of 627.727(1) & (9)."

Reply (DE 180), p. 2.

*Jervis* sets forth its holding in the first paragraph of the opinion:

> We hold that the failure to serve the mandatory notice precludes the insurance company from claiming that the insured orally made a knowing choice regarding the stacking of UM coverage.

*Jervis*, 243 So. 3d at *1. This holding conflicts with decades of established Florida precedent, as explained in the Response (DE 153). The Court should, however, honor Plaintiff's request to construe *Jervis's* holding narrowly, which bars its application to the instant case for two reasons.

First, the electronic signature process at issue in *Jervis* differs markedly from the instant case, which renders the *Jervis* decision inapplicable here. In *Jervis* the UM rejection form (the "M9 form") was not displayed to the insured unless he clicked on a hyperlink to display the form, and there was no evidence that the insured ever viewed the M9 form. The electronic signature process applicable in *Jervis* – which was not in use when Oscar Richard signed the M9 form years earlier – allowed the *Jervis* plaintiff to sign the M9 form by checking a box without actually viewing the M9 form (the M9 form would only be displayed to the insured if the insured clicked on a separate hyperlink). In other words, the *Jervis* plaintiff could sign the M9 form without ever viewing it. *See Jervis*, 243

So. 3d at *1, citing the trial court's opinion ("It was not electronically possible to actually sign the M9 form. One must sign on a precursor screen.").

In contrast to the *Jervis* electronic signature process, GEICO displayed the M9 form to Mr. Richard and Mr. Richard was required to scroll through the form in order to electronically sign it. This critical distinction between the electronic signing process in *Jervis* and *Richard* renders the *Jervis* holding inapplicable here.

Second, the *Jervis* holding would only apply when the insured "fail[s] to serve" the UM rejection form, which did not occur here because Mr. Richard viewed and signed the M9 form.

## B. Plaintiff misconstrues the *Jervis* holding

Plaintiff repeatedly misconstrues *Jervis's* holding in an attempt to pass her unsupported legal arguments off as *Jervis's* holding. Contrary to Plaintiff's claim, *Jervis* did not address GEICO's gap counseling or alleged "general business practice of not providing the mandatory written statutory notice **before** the policy was initially purchased." Reply (DE 180), p. 6 (emphasis added). Additionally, *Jervis* did not address the issue of when an insurer must provide the insured with the UM rejection form, and this Court has repeatedly rejected Plaintiff's argument that she is entitled to UM coverage because GEICO did not obtain the signed M9 form prior to issuing the policy. *See* Order (DE 73), pp. 1-2.

Similarly, Plaintiff is incorrect by arguing that *Jervis*, which addressed facts and an electronic signature process that was unique to that case, applies to the Richard sale, which occurred years before and involved a different electronic signature process.  *See* Reply, p. 3 ("The *Jervis* opinion makes it clear that GEICO's self-created process does not operate as a substitute for the clear requirements of 627.727.").  This renders *Jervis* inapposite.[2]

**C. Plaintiff fails to address GEICO's arguments rebutting Plaintiff's false Class I/Class II distinction and this alleged distinction is unsupported by Florida law**

As explained in the Response, no Florida court has ever held that whether an insurer may assert an oral rejection of UM coverage defense turns on whether the claimant is a Class I or Class II insured.  *See* Response (DE 153), pp. 17-21.  Plaintiff's continued assertion of this incorrect distinction is specious and without any legal support.  Plaintiff's reliance on *Gov't Employees Ins. Co. v. Douglas*, 627 So.2d 102 (Fla. 4th DCA 1993), *approved,* 654 So.2d 118 (Fla. 1995) is misplaced for the reasons explained in the Response (DE 153), pp. 16-17.  Moreover,

---

[2] Plaintiff also misrepresents the facts of this case by, for example, claiming that "Mr. Richard was never advised in writing that UM coverage had been dropped…." *See* Reply (DE 180), p. 3.  As Michael Tirino testified at trial, UM coverage was displayed to Mr. Richard during the online application process and Mr. Richard had the opportunity to select UM coverage.  Further, Mr. Richard viewed his coverage selections several times before calling the GEICO sales agent to purchase the policy.

*Douglas* does not address Plaintiff's invented distinction between Class I and Class II insureds as it relates to the applicability of an oral rejection of UM coverage.

Plaintiff mischaracterizes the holding in *Mercury Insurance Co. v. Anatkov*, 929 So.2d 624 (Fla. 3d DCA 2006) in an attempt to support her argument that, in the Class II insured context, an insurer may establish an oral rejection of UM coverage, while an insurer may not do so in the Class I insured context. GEICO details the facts of *Anatkov* on pages 14 through 15 of the Response. The *Anatkov* holding had **nothing** to do with the Class I nature of the insured – indeed, the Class I versus Class II distinction is not even addressed in the opinion. Instead, the *Anatkov* insured was entitled to UM coverage because the insured's signature on the UM rejection form was forged and the insurer did not put forward any evidence that the insured had made a knowing rejection (oral or otherwise) of UM coverage. *Id*. at 626.

Similarly, Plaintiff mischaracterizes *Union American Ins. Co. v. Cabrera*, 721 So.2d 313 (Fla. 3d DCA 1998) because nothing in *Cabrera* suggests that the plaintiff's status as a Class II insured had any bearing on whether the insurer could assert that the named insured (Cabrera's employer) made a knowing, oral rejection of UM coverage. *See* Response (DE 153), pp. 18-19.

Further, Plaintiff fails to rebut GEICO's argument that it is illogical that different insureds could have different UM coverages under the same policy. *See Id.*, p. 20.

**D. Plaintiff fails to put forward any evidence establishing that GEICO allegedly willfully disregarded the requirements of §627.727**

Plaintiff asks the Court to make a premature finding of bad faith in this coverage dispute, but she fails to rebut any of GEICO's arguments on the willfulness issue. *See* Response (DE 153), pp. 21-23. Moreover, Plaintiff concedes that a willfulness finding is beyond the scope of this lawsuit. *See* Reply (DE 180), p. 14.

**E. Plaintiff's request to "void" the M9 form is unsupported**

Plaintiff does not explain the legal consequence of a "void" M9 form versus the Court's prior holding that the M9 form did not entitle GEICO to a conclusive presumption. In this lawsuit and at trial GEICO was unable to benefit from §627.727's conclusive presumption, but GEICO was able to use the M9 form as evidence supporting Mr. Richard's oral, knowing rejection. Accordingly, the Court should not "void" the M9 form because it is unnecessary and irrelevant to issues in dispute.

## II. GEICO's Reply to Plaintiff's Response in Opposition to GEICO's Cross-Motion for Partial Summary Judgment (DE 180, pp. 14-18)

**A. Section 627.421 is applicable to the M9 form whether or not the M9 form is "a component of the policy itself"**

Plaintiff asserts contradictory arguments with respect to whether the M9 form was part of the policy. In support of her request to "void" the M9 form, Plaintiff asserts that it is an endorsement to the insurance policy. *See* Reply (DE 180), pp. 13-14. However, in opposition to GEICO's Cross-Motion for Partial Summary Judgment, Plaintiff argues that §627.421is inapplicable because the M9 form "is not a component of the policy itself" and §627.421 "would not apply to an insurance form that is not a part of the policy itself." *Id.*, p. 15.

To the contrary, §627.421is not limited solely to policies, as subsection (1) expressly applies to the electronic delivery of "policy documents, including, but not limited to, policies, endorsements, notices, or documents…." Additionally, §627.421(5) applies to "[a]n electronically delivered document" and this subsection's applicability is not limited to only "policies." Accordingly, §627.421 applies to UM rejection forms, such as the M9 form.

**B. Section 627.421(5) obviates the need for OIR approval of the "electronic" version of the previously approved "paper" M9 form**

As explained in the Cross-Motion, GEICO's "paper" version of the M9 form was approved by the OIR and the "electronic" version of the M9 form that Mr. Richard signed contained no substantive changes (*i.e.*, no changes in the form's

10

language).  *See* Response (DE 153), pp. 24-25.  The Court held, in part, that GEICO was required to seek OIR review and approval of the electronic version of the M9 form even though the changes were minor and only affected the structure of the document.  *Id.*, pp. 23-24; *see also* Order (DE 73), pp. 2-3.

Section 627.421(5) obviates the need for OIR review and approval of the electronic version of the M9 form because the electronic version's formatting "has reasonably similar proportions or emphasis of the characters relative to the rest of the electronic document…."  §627.421(5), Fla. Stat.  As explained in the Response, the effect of §627.421(5) is to provide a way to compare electronic insurance documents to their paper counterparts:

> *Effect of the Bill*
>
> The bill provides a means for electronic insurance documents to be measured in comparison to paper based document standards. The electronic document will satisfy certain standards applicable to paper documents if the elements have reasonably similar proportions or emphasis in their electronic format and context or are displayed in a reasonably conspicuous manner.[37]

*Florida House of Representatives Final Bill Analysis* (June 27, 2017), DE 152-1 at p. 22.  The electronic version of the M9 form, despite the minor formatting changes, has "reasonably similar proportions" to the paper M9 form.  Therefore, the electronic version did not require OIR reapproval because the paper and electronic documents are the same pursuant to §627.421(5).

11

**C. The 2013 revisions to the M9 form are irrelevant**

Plaintiff argued in her initial motion for partial summary judgment (DE 47) that the 2013 revisions to GEICO's M9 form somehow retroactively "unapproved" the version of the M9 form that Mr. Richard signed during 2007. GEICO addressed this argument in detail in its Response to Plaintiff's Motion for Partial Summary Judgment (DE 53, pp. 12-21).

The OIR approved the paper version of the M9 form during 1997. *See* DE 45-7, p. 53 (M9 form's "effective date"); and DE 43-9. Mr. Richard signed the electronic version of the M9 form on March 8, 2007 (DE 43-13). Plaintiff's exhibit from the OIR (DE 45-7) makes clear that the OIR did not withdraw the M-9 form or forbid GEICO's use of it. Instead, GEICO voluntarily submitted the 2013 M9 form to the OIR for its approval and GEICO notified the OIR that GEICO was voluntarily withdrawing the prior M9 form (M9FL11-96) during 2013. *See* 45-7, p. 32.

Additionally, pages 52 through 56 of DE 45-7 reflect that the M9 form, identified as M9FL (11-96), had an effective date of February 24, 1997, and that GEICO submitted M9FL (04-13) to replace the still approved M9FL (11-96) form.[3] Revisions requested by the OIR to the amended M9 form, which occurred

---

[3] This is reflected in the sections "Forms to Be Reviewed" and "Forms Previously Submitted."

over six years after Mr. Richard signed the M9 form, do not alter the fact that the M9 form was approved by the OIR at the time that Mr. Richard signed it.

Lastly, none of the OIR's requested revisions to GEICO's 2013 M9 form (DE 45-7, pp. 12-14) relate to the minor formatting differences between the paper (DE 45-7, pp. 49-50; DE 43-9; DE 43-10) and the electronic (DE 43-13) versions of the M9 form.

**D. Section 627.421(5) is a procedural statute and should be applied retroactively**

Plaintiff argues that §627.421(5) is not procedural because "[t]here is nothing in the legislative history or enabling language of 627.421(5) that suggests retroactivity and none can be inferred." Reply (DE 180), p. 17. This argument fails because it ignores the exception that procedural statutes, unlike substantive statutes, may be applied retroactively. *See* Response (DE 153), p. 25-27 (analyzing the retroactive application of §627.421(5)). Thus, "[t]he general rule is that a substantive statute will not operate retrospectively absent clear legislative intent to the contrary, but that a procedural or remedial statute is to operate retrospectively." *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So.2d 55, 61 (Fla. 1995) (citing *Arrow Air, Inc. v. Walsh,* 645 So. 2d 422 (Fla. 1994).

Section 627.421(5) neither creates a new obligation or duty, nor does it impair or destroy existing rights. Instead, §627.421(5) concerns the means and

13

methods to apply duties by addressing formatting issues when paper documents are converted to electronic form.

Contrary to Plaintiff's claim, GEICO does not "seek[] to use 627.421(5) as a substantive 'eraser' of the font requirements of 627.727(1)." Reply (DE 180), p. 17. Instead, GEICO seeks to apply 627.421(5)'s "reasonably similar proportions or emphasis of characters" analysis to the electronic M9 form's "font, size, … spacing, or other formatting requirement for printed documents…." Notably, Plaintiff does not claim that the electronic M9 form's font, size, spacing, or formatting does not have "similar proportions or emphasis of the characters relative to the rest of the electronic document" when compared with the OIR-approved paper M9 form.

### III. Conclusion

For the foregoing reasons, GEICO respectfully requests that the Court: (1) deny Plaintiff's Renewed Motion for Partial Summary Judgment, and (2) grant GEICO's Cross-Motion for Partial Summary Judgment.

### Local Rule 7.1(F) Certification

This motion contains 3,110 words and undersigned calculated the word count at the time of filing using Microsoft Word's word count tool.

>Respectfully submitted,
>
>**SHUTTS & BOWEN LLP**
>*Counsel for Government Employees Insurance Company*
>200 S. Biscayne Boulevard
>Suite 4100
>Miami, Florida 33131
>Tel:  (305) 358-6300
>
>By: s/Brad Redlien
>   Frank A. Zacherl
>   fzacherl@shutts.com
>   Florida Bar No. 0868094
>   Brad Redlien
>   Florida Bar No. 0778761
>   bredlien@shutts.com

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF on the 20th day of July, 2018 on all counsel or parties of record on the Service List below.

>By: s/Brad Redlien
>    Of Counsel

## SERVICE LIST

Kenneth J. McKenna, Esq.
Dellecker Wilson King McKenna
Ruffier & Sos, LLP
719 Vassar Street
Orlando, FL 32804
kmckenna@dwklaw.com
wdmeservice@dwklaw.com
Counsel for Plaintiff

MIADOCS 16688943 5