# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**NICOLE RICHARD,**

    *Plaintiff,*

v.                          Case No. 4:16cv184-MW/CAS

**GOVERNMENT EMPLOYEES
INSURANCE COMPANY,**

    *Defendant.*

_____/

## ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff is suing Defendant for uninsured-motorist ("UM") damages under Florida law. ECF No. 35. One of the defenses in this case is that UM coverage was orally rejected. ECF No. 41, at 7. A line of Florida cases seems to allow for oral rejection of UM coverage, but a recent case—*Jervis v. Castaneda*, 243 So. 3d 996, (Fla. 4th DCA 2018)—has called that line of cases into question. This Court must now decide whether, in light of *Jervis*, oral rejection remains a viable defense. For the reasons that follow, this Court finds that oral rejection is not a viable defense under the facts of this case. Accordingly, Plaintiff's renewed motion for partial summary judgment, ECF No. 150, is **GRANTED**.

1

## I. Background

Plaintiff, Nicole Richard, alleges she was injured in a car accident caused by an uninsured/underinsured motorist. *See* ECF No. 35, at 2. At the time of the accident, Plaintiff lived with her father, Oscar Richard. *Id.* at 3. Mr. Richard had an active car insurance policy with Defendant, Government Employees Insurance Company ("Geico"). *Id.* at 3–4. Plaintiff thought Mr. Richard's policy included UM coverage, so she asked Geico to cover her losses from the accident.[1] *Id.* at 5. But Geico refused to cover Plaintiff's losses, claiming that Mr. Richard had knowingly rejected UM coverage when he originally purchased the policy in March 2007. *See* ECF No. 102. Plaintiff disagreed that Mr. Richard had rejected UM coverage, so she sued Geico for breach of contract. *See* ECF No. 35. The parties jointly decided to try the issue of coverage separately from the issues of liability and damages, and this Court bifurcated the case accordingly. ECF No. 33.

Still at the coverage phase, both parties moved for summary judgment. ECF No. 44; ECF No. 47. For its part, Geico argued that

---

[1] As a resident relative of Mr. Richard, Plaintiff would be covered under Mr. Richard's policy to the extent it offered UM coverage. *See* ECF No. 35-1, at 26 (defining "insured" to include resident relatives).

2

Mr. Richard's knowing rejection of UM coverage could be conclusively presumed because he electronically signed a rejection form approved by the Florida Office of Insurance Regulation ("OIR").[2] ECF No. 44, at 16–28. Geico also separately argued that Mr. Richard orally rejected UM coverage. *Id.* at 29–30. Contrarily, Plaintiff argued that Geico failed to obtain a knowing rejection and that the rejection form at issue had not been approved by the OIR. *See* ECF No. 47.

After hearing oral arguments from both sides, this Court denied Geico's motion and partially granted Plaintiff's motion.[3] This Court held Geico is not entitled to a conclusive presumption because the rejection form used was not approved by the OIR and did not precisely track required statutory verbiage. ECF No. 73, at 2–3. However, this Court agreed with Geico "that one may orally reject [UM] coverage." *Id.* at 5. This Court found that there were genuine disputes of material fact as to oral rejection, so the issue

---

[2] Section 627.727(1), Florida Statutes, provides that if a statutorily compliant rejection form "is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage." The form must be "approved by the [OIR]" to be compliant. *See id.*

[3] The hearing took place on January 27, 2017. *See* ECF No. 71; ECF No. 74. This Court orally announced its rulings at the hearing and then followed up with an order summarizing those rulings. ECF No. 73.

3

would have to go to a jury. *See id.* The case then went to trial from August 7–9, 2017, but resulted in a mistrial due to a hung jury. *See* ECF No. 122.

Before the coverage portion of the case was scheduled to be retried, Plaintiff filed a notice of supplemental authority informing this Court about the *Jervis* decision. ECF No. 144. This Court recognized that *Jervis* seemed to foreclose Geico's oral-rejection defense, so this Court ordered Plaintiff to file a renewed motion for partial summary judgment addressing *Jervis*. ECF No. 145. After considering Plaintiff's renewed motion as well as Geico's response, this Court decided to take Plaintiff's motion under advisement pending a retrial.[4] On retrial, the jury found that Mr. Richard orally rejected UM coverage when he purchased the subject policy in March 2007.[5] As such, Plaintiff's renewed motion for partial summary judgment is now ripe.

---

[4] This Court reasoned that if the jury found as a factual matter Mr. Richard had not orally rejected UM coverage, then there would be no need to decide the legal question of whether oral rejection is statutorily permissible.

[5] The jury wasn't directly asked whether Mr. Richard orally rejected UM coverage. Instead, the jury was asked: "Did Oscar Richard make a knowing rejection of uninsured motorist coverage before the Geico Policy was issued at 12:01 AM on March 8th, 2007?" ECF No. 178. The jury's verdict in the affirmative necessarily includes a finding that Mr. Richard orally rejected UM coverage because there was no other rejection upon which the jury could have based its verdict. That is, the only evidence of rejection prior to issuance of the policy pertained to Mr. Richard's phone conversation with a Geico agent.

4

## II. Oral Rejection of UM Coverage in Florida: From *Glover* to *Jervis*

This Court must decide whether oral rejection of UM coverage is permissible under Florida law. The answer to that question lies in section 627.727, Florida Statutes; the statute that governs the provision and rejection of UM coverage in Florida. Although this Court must apply the 2007 version here,[6] it is worth noting how the statute has changed over time.

This Court begins with the statute as it existed in 1971. At that time, the statute provided in relevant part that:

> No automobile liability insurance . . . shall be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage; . . . .

§ 627.727(1), Fla. Stat. (1971).

---

[6] Under Florida law, this Court "look[s] at the date the insurance policy was issued and not the date that the suit was filed or the accident occurred, because 'the statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract.'" *Menendez v. Progressive Express Ins. Co.*, 35 So. 3d 873, 876 (Fla. 2010) (quoting *Hassen v. State Farm Mut. Aut. Ins. Co.*, 674 So. 2d 106, 108 (Fla. 1996)).

5

Simply put, the statute required insurers to include UM coverage in every automobile insurance policy unless rejected by a named insured. *Id.* The statute did not prescribe a specific method of rejection. *Id.* Accordingly, courts accepted that an insured could reject UM coverage orally. *See, e.g.*, *Glover v. Aetna Ins. Co.*, 363 So. 2d 12, 13 (Fla. 1st DCA 1978) ("Aetna contends that Section 627.727(1), [Florida Statutes (1971),] does not require written rejection and that oral rejection is sufficient. We agree and affirm.").

The Florida Department of Insurance apparently wasn't happy with oral rejections because it soon promulgated two administrative rules that were read to require written rejections.[7] Florida courts were subsequently divided as to the impact of the new rules.[8] Eventually, the Florida Supreme Court stepped in and

---

[7] Sometime in 1971, the department issued Rule 4-28.02. At least one court interpreted Rule 4-28.02 to require written rejections. *See Decker v. Great Am. Ins. Co.*, 392 So. 2d 965, 968 (Fla. 2d DCA 1980). In 1973, the department issued Bulletin 586. *See* 1973 WL 296609. The former Fifth Circuit upheld Bulletin 586 as valid. *Harris v. U.S. Fid. & Guar. Co.*, 569 F.2d 850, 851 (5th Cir. 1978).

[8] *Compare Cohen v. Am. Home. Assurance Co.*, 367 So. 2d 677, 681 (Fla. 3d DCA 1979) ("It is also established by the Florida Department of Insurance regulations that [a UM] rejection or selection must be in writing."), *with Del Prado v. Liberty Mut. Ins. Co.*, 400 So. 2d 115, 116 (Fla. 4th DCA 1981) ("[I]f there is a statutory or other administratively imposed obligation to secure a written rejection, certainly the named insured can waive this requirement which was designed for its protection.").

6

explained that written rejections were not required despite the administrative rules:

> It is true that a regulatory agency's construction of a statute the agency is assigned to enforce is entitled to considerable weight. However, when the language of a statute is plain and its meaning clear, resort to this or any other rule of statutory construction is unnecessary. The statute under consideration is clear and unambiguous in requiring that uninsured motorist coverage be contained in a policy, unless it is rejected by the insured. However, the statute does not require written rejection nor does it mandate rejection in a specific form. What the statute does require is that a rejection of uninsured motorist coverage or selection of lower limits of coverage must be knowingly made.
>
> The question of whether an insured has knowingly rejected uninsured motorist coverage or knowingly selected coverage in a lesser amount than that which the insurer is required to make available is an issue to be decided by the trier of fact.

*Kimbrell v. Great Am. Ins. Co.*, 420 So. 2d 1086, 1088 (Fla. 1982) (citations and internal quotation marks omitted).

But before the dust could even begin to settle, the Florida legislature came out with a crucial pair of amendments to the statute. Specifically, in 1982 the legislature made clear that UM rejections have to be in writing by adding the words "in writing" to the following clause of section 627.727(1):

> However, the coverage required under this section shall not be applicable when, or to the extent that, any

7

> insured named in the policy shall reject the coverage <u>in writing</u>.

Ch. 82-243, § 544, Laws of Fla. [added words underlined].

In 1984, the legislature further modified the statute by requiring that UM rejections be made on a statutorily delineated form, by requiring that the form advise the insured about certain information, and by providing for a conclusive presumption of knowing rejection if the form is signed by a named insured. Specifically, the following sentences were added to the statute:

> The rejection or selection of lower limits shall be on a form approved by the Insurance Commissioner. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured it shall be a conclusive presumption that there was an informed, knowing rejection of coverage or election of lower limits.

Ch. 84-41, § 1, Laws of Fla.

But the legislature's amendments didn't stop courts from holding that an insured could still orally reject UM coverage. One of the first cases to address the '82 and '84 amendments was *Quirk*

8

*v. Anthony*, 563 So. 2d 710 (Fla. 2d DCA 1990). The main holding in *Quirk* was that a class II insured[9] has standing to challenge an insurer's failure to obtain a written rejection. *See id.* at 714. However, *Quirk* went beyond that holding and also explained that there can still be a rejection of UM coverage without writing:

> Although we hold that a class II insured has standing to raise the issue of a written rejection, this does not mean that the class II insured automatically receives UM coverage in the absence of a written rejection by the named insured. We agree that an insured can waive rights which it receives by regulation or statute. Thus, once a class II insured establishes that no written rejection exists, the burden of proof shifts to the insurance carrier. The carrier must then prove that the named insured waived the right to a written rejection by otherwise making a knowing rejection.

*Id.* at 715 (citations omitted).

In short, *Quirk* held that a named insured can *orally waive* the statutory requirement of rejecting UM coverage in writing. *Id.* To support its holding that "an insured can waive rights which it receives by regulation or statute," *Quirk* cited to *Del Prado v.*

---

[9] "Typically, automobile insurance policies recognize two classes of insureds, Class I insureds and Class II insureds." *Travelers Commercial Ins. Co. v. Harrington*, 154 So. 3d 1106, 1109 n.3 (Fla. 2014). "[C]lass I insureds are named insureds and resident relatives of named insureds." *Id.* (alteration in original) (quoting *Travelers Ins. Co. v. Warren*, 678 So. 2d 324, 326 n.2 (Fla. 1996)). "Class II insureds are all other lawful occupants of an insured vehicle who are not the named insureds or a resident relative of the named insured; essentially, they are 'third party beneficiaries of the named insureds' policy.'" *Id.* (quoting *Warren*, 678 So. 2d at 326 n.2).

9

*Liberty Mut. Ins. Co.*, 400 So. 2d 115 (Fla. 4th DCA 1981). *Id.* Although *Del Prado* was decided before the '82 and '84 amendments (i.e., before written rejections were statutorily required), that doesn't inherently make it any less reliable. *Del Prado* simply held that "[s]tatutory rights can be waived." 400 So. 2d at 116 (citing *Abell v. Boynton*, 117 So. 507 (Fla. 1928)). There's no reason why that proposition should be any less true after the legislature enacted the '82 and '84 amendments.

The Florida Supreme Court later affirmed *Quirk* and agreed that a class II insured has standing to challenge an insurer's failure to obtain a written rejection. *Travelers Ins. Co. v. Quirk*, 583 So. 2d 1026 (Fla. 1991). Unfortunately, the Florida Supreme Court did not address *Quirk*'s holding that rejection could still be proven without writing. *See id.* In that regard, the court offered only the following cryptic (and perhaps unrelated) statement:

> We agree with Quirk . . . that a challenge to the written-rejection requirement is part and parcel of the challenge to a knowing rejection of UM coverage, and accordingly, Quirk has standing to raise the issue. The only rational procedure by which a class II insured can challenge the existence of a knowing rejection of UM coverage must necessarily begin with the existence of an executed rejection form.

*Id.* at 1028.

10

Soon, other courts began citing to *Quirk* and its progeny for the proposition that UM coverage could be rejected orally and/or without using the statutorily delineated form.[10] And for a while that issue seemed settled. But then *Jervis* entered the scene.

The facts of *Jervis* are quite simple. Mr. Jervis bought UM coverage from Geico's website and allegedly signed an electronic form selecting non-stacked[11] coverage. 243 So. 3d at 997. On summary judgment, the trial court held that the form was "void" and therefore Geico was not entitled to a conclusive presumption. *See id.* After summary judgment, Geico amended its affirmative defenses to assert that Mr. Jervis "made an oral rejection of

---

[10] *See, e.g.*, *Chmieloski v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 563 So. 2d 164, 166 (Fla. 2d DCA 1990) (citing *Quirk* and holding that "an insurer can avoid the statutorily required coverage if it proves that the named insured orally waived the statutory requirement of a written rejection"); *accord Union Am. Ins. Co. v. Cabrera*, 721 So. 2d 313, 314 (Fla. 3d DCA 1998); *Belmont v. Allstate Ins. Co.*, 721 So. 2d 436, 438 (Fla. 5th DCA 1998). *See also Adams v. Aetna Cas. & Sur. Co.,* 574 So. 2d 1142, 1147 (Fla. 1st DCA 1991) (citing *Quirk* and holding that, with respect to the 1982 version of the statute, "the insurer's failure to obtain the statutorily required signed written rejection shifts the burden to the insurer to prove a waiver by the insured of such statutory rights").

[11] In Florida, UM coverage can be stacked or non-stacked. "[S]tacked uninsured coverage enables the insured to stack the coverage for one owned automobile onto the coverage of another owned automobile." *Collins v. Gov't Emps. Ins. Co.*, 922 So. 2d 353, 355 (Fla. 3d DCA 2006). In other words, "stacking allows an insured who pays separate premiums for uninsured motorist coverage to obtain benefits for each premium paid." *Rando v. Gov't Emps. Ins. Co.,* 39 So. 3d 244, 247 (Fla. 2010).

11

stacked UM coverage." *Id.* The case then went to trial on the oral-rejection issue, and the jury ruled in favor of Geico. *Id.*

On appeal, Florida's Fourth District of Appeal began its analysis by looking at the language of section 627.727(1). *Id.* at 997–98. After quoting a portion of the section, the court stated that "[t]he nine 'shalls' in the statute lead to the conclusion that the written notice is a mandatory prerequisite to an insured's waiver of the right to UM coverage." *Id.* at 998. The court then quoted a portion of section 627.727(9) and noted that it "mandates notice to the insured in writing, on a form approved by the Office of Insurance Regulation, of the limitations allowed by the subsection." *Id.* (footnote omitted).

The Fourth District also explained that it had already raised the issue of notice in a prior case, *Douglas*,[12] and that the Florida Supreme Court affirmed *Douglas* and repeated the same concerns. *Id.* at 999. Having emphasized how important "notice" was, the Fourth District then announced its ultimate holding:

> The record in this case is that Geico's notice was void, which means that, in the eyes of the law, there was no section 627.727 notice at all. Without such notice, there can be no informed and knowing acceptance of the limitations on stacking. To allow an insurance

---

[12] *Gov't Emps. Ins. Co. v. Douglas*, 627 So. 2d 102 (Fla. 4th DCA 1993).

12

> company to prove that an insured orally and knowingly rejected stacked coverage in the absence of the statutory notice would undermine the legislature's determination that such written notice is mandatory. The summary judgment ruling in this case conclusively established that the notice was void. Jervis's second motion for summary judgment should have been granted, obviating the necessity of a trial. Similarly, at the jury trial, Jervis's motion for directed verdict should have been granted.[13]

*Id.*

### III. Applying *Jervis* to this Case

To be clear, the issue in *Jervis* was whether the insured had knowingly selected non-stacked coverage pursuant to 627.727(9); the issue was not whether the insured had rejected UM coverage altogether pursuant to 627.727(1). *See id.* at 997–1000. This case, of course, deals with wholesale rejection under 627.727(1). But this distinction doesn't make *Jervis* inapplicable here.

As *Jervis* recognized, both 627.727(1) and 627.727(9) include "notice" requirements. *See id.* at 997 (referring to "the written notice provisions of section 627.727(1) & (9)"). Admittedly, the two

---

[13] It is important to note that *Jervis* did not outlaw oral rejections entirely. *See* 243 So. 3d at 997–1000. *Jervis* simply held that there can be no knowing rejection (oral or otherwise) without first giving statutory notice. *See id.* Nothing in *Jervis* suggests that oral rejections are impermissible where proper notice *has* been given. *See id.*

13

notice requirements are *somewhat* different[14] but that didn't stop *Jervis* from analyzing both subsections. Indeed, *Jervis* specifically looked at 627.727(1) and held that "the written notice is a mandatory prerequisite to an insured's waiver of the right to UM coverage." *Id.* at 998. Here, like in *Jervis*, Geico failed to give proper "notice" to Mr. Richard before obtaining his oral rejection.[15] So if *Jervis* is binding precedent, then this Court must grant summary judgment in Plaintiff's favor.

The Eleventh Circuit has explained that "[a] federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication

---

[14] Subsection (9) imposes a *direct* duty to notify, explicitly providing that "insurers shall inform the named insured" of certain limitations. § 627.727(9), Fla. Stat. On the other hand, subsection (1) imposes an *indirect* duty to notify—it doesn't explicitly require insurers to inform the insured; rather, it merely provides that "[t]he [UM rejection] form shall fully advise the applicant." § 627.727(1), Fla. Stat.

[15] *Jervis* held that Geico failed to give proper notice because the selection/rejection form Geico used was "void." *See Jervis*, 243 So. 3d at 999. ("The record in this case is that Geico's notice was void, which means that, in the eyes of the law, there was no section 627.727 notice at all."). The trial court held that the form was "void" because the insured could not sign the form or deselect the form's preselected waiver of stacked UM coverage. *Id.* at 997. Here, the rejection form Geico used was "void" for other reasons: it was not approved by the OIR and did not precisely track required statutory verbiage. *See* ECF No. 73, at 2–3. Under *Jervis*'s logic, it shouldn't matter *why* the form is "void"; if any one of the many shalls in the statute are ignored (e.g., if the form uses 11-point type rather than 12-point type), then proper notice hasn't been given. *Cf.* 243 So. 3d at 998 ("The nine 'shalls' in the statute lead to the conclusion that the written notice is a mandatory prerequisite to an insured's waiver of the right to UM coverage.").

14

that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983). Here, there is no persuasive indication that the Florida Supreme Court would rule differently than *Jervis*. If anything, there's reason to believe that the Florida Supreme Court would affirm *Jervis*.[16]

Indeed, as noted in *Jervis*, the Florida Supreme Court already touched on the issue of notice when it held: "to limit coverage validly, the insurer must satisfy the statutorily-mandated requirement of notice to the insured and obtain a knowing acceptance of the limited coverage." *Government Employees Ins. Co v. Douglas*, 654 So. 2d 118, 120 (Fla. 1995). Admittedly, that holding related to the section 627.727(9) notice—not the section 627.727(1) notice at issue here—but the same logic should carry over. That is, if the Florida Supreme Court found that

---

[16] And perhaps it will. *Jervis* is currently on appeal before the Florida Supreme Court. *See Geico Gen. Ins. Co. v. Jervis*, No. SC18-1169 (Fla.). But the Florida Supreme Court has very limited jurisdiction. *See* Art. V; § 3(b), Fla. Const. The only source of jurisdiction for the *Jervis* appeal would be based on express and direct conflict with another Florida appellate decision. *See id.* As explained *infra* at page 16, no such conflict arguably exists. On the other hand, if this order is appealed and the Eleventh Circuit certifies a question, then the Florida Supreme Court would clearly have jurisdiction. Art. V; § 3(b)(6). In either case, however, exercising jurisdiction would be entirely discretionary. *See* Art. V; § 3(b)(3), (6), Fla. Const.

15

notice is a prerequisite to limiting coverage under 627.727(9), it would presumably also find that notice is a prerequisite to rejecting coverage under 627.727(1).[17]

Geico argues that the Florida Supreme Court would rule differently than *Jervis* because "[t]he *Jervis* decision conflicts with all other Florida precedent." *See* ECF No. 185, at 1. But none of the cases Geico cites *actually* conflict with *Jervis*. That is, although Geico cites several cases that allow oral rejections, not a single one of those cases explicitly addressed the issue of notice. While it might be apparent from the facts of those cases that notice was lacking,[18] it would be disingenuous to interpret those cases as allowing oral rejection absent notice because it's just as likely that the issue of notice was never raised. *Cf. State ex rel. Helseth v. Du Bose*, 128 So. 4, 6 (Fla. 1930) ("[N]o decision is authority on any question not raised and considered, although it may be involved in

---

[17] Public policy considerations would certainly counsel such a result. It would be odd to hold that a higher standard applies to selecting limitations on coverage (which still leaves you with some coverage) as opposed to rejecting coverage (which leaves you with no coverage at all).

[18] *See, e.g., Cabrera*, 721 So. 2d at 314 (noting that "documents pertaining to the original issuance of the insurance policy had been destroyed under its records retention policy"; as such, "the written rejection" upon which the section 627.727(1) notice would have been given "could not be produced in the lawsuit").

16

the facts of the case."). Finally, even if this Court were to interpret Geico's cases the way Geico wants it to, those cases would still need to provide a "*persuasive* indication that the [Florida Supreme Court] would decide the issue otherwise." *Silverberg*, 710 F.2d at 690 (emphasis added). This Court is not so persuaded.

Nevertheless, the Eleventh Circuit may have a very different view of what *Jervis* means and whether the Florida Supreme Court would agree with *Jervis*. Given that uncertainty, it seems that the most prudent way of moving forward with this case is to allow for an interlocutory appeal of this order pursuant to 28 U.S.C. § 1292(b). Otherwise, the parties risk proceeding with this case through the liability and damages portions, taking the whole case up on appeal once it's finally over, only then to find out that Plaintiff had no coverage to begin with. *Cf. McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1257 (11th Cir. 2004) (noting that § 1292(b) was drafted to permit interlocutory appeals in situations that "involve potentially dispositive legal questions collateral to the merits that might render unnecessary a lengthy trial").

17

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's renewed motion for partial summary judgment, ECF No. 150, is **GRANTED**.

2. This Court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of this litigation.[19] The

---

[19] The Eleventh Circuit has emphasized that district courts should specify the "controlling question or questions of law" at issue when they seek to certify under § 1292(b). *See McFarlin*, 381 F.3d at 1255 ("The district court's failure to specify the controlling question or questions of law it had in mind when certifying that the case meets the requirements of § 1292(b) is a factor we may consider in deciding how to exercise our discretionary power to review. It does not, however, remove our power of review."). With that in mind, this Court offers the following "controlling question":

> *Whether, under Florida law, an insured may orally reject uninsured-motorist coverage when the insured was not provided notice on a form consistent with the requirements of section 627.727(1), Florida Statutes?*

This Court recognizes that section 627.727(1) has been amended in the past and will undoubtedly be amended in the future. As such, the question offered above may be irrelevant depending on the version of the statute at issue in a given case. Nevertheless, with respect to the question presented, section 627.727(1) has not changed much since the '82 and '84 amendments. Of course, this Court could have limited the question to the 2007 version of the statute (the version at issue here, *see supra* n.6), but the Eleventh Circuit has stated that "[t]he legal question must be stated at high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *McFarlin*, 381 F.3d at 1259. Accordingly, this Court leaves the question the way it is. Either way, the Eleventh Circuit could always answer a different question if it

18

parties are reminded that if they want to immediately appeal this order, they must file an "application" (i.e., "a petition for permission to appeal") with the United States Court of Appeals for the Eleventh Circuit "within ten days after the entry of [this] order. 28 U.S.C. § 1292(b); Fed. R. App. P. 5(a). If either party files such an application, then this case shall be stayed pending resolution in the Eleventh Circuit.

3. If neither party seeks an immediate appeal of this order, then the parties are directed to file a notice with this Court stating as much. This Court will then enter an updated scheduling order to govern the case moving forward.

**SO ORDERED on August 10, 2018.**

                                          **s/Mark E. Walker**  
                                          **Chief United States District Judge**

---

so chooses. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) ("[T]he appellate court may address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court." (internal quotation marks omitted)).